CITY OF NORWICH *v.* STYX INVESTORS IN
NORWICH, LLC, ET AL.
(AC 25727)

Flynn, DiPentima and Harper, Js.

Argued September 16, 2005—officially released January 3, 2006

*Matthew G. Berger,* for the appellant (defendant Styx Investors in Norwich, LLC).

*Dana M. Horton,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendant condemnee, Styx Investors in Norwich, LLC, owner of real property in Norwich, appeals from the judgment of the trial court awarding damages of $20,000 for the condemnation of that property by the plaintiff condemnor, the city of Norwich.[1] Specifically, the condemnee claims that the court acted improperly by not awarding to it the highest and best use, the likely assemblage value of the property. We are thus called upon to determine whether the court improperly failed to apply the assemblage doctrine in light of the general rule that the loss to the owner

---

[1] Both Styx Investors in Norwich, LLC (Styx Investors), and Perkins Block Associates, LLC, were parties to the appeal and application for review of the statement of compensation at the trial court. The court found that Styx Investors was the owner of the property at the date of condemnation and that Perkins Block Associates, LLC, had an interest in the property by virtue of a mortgage that had been released. The court found that Styx Investors had standing to challenge the statement of condemnation. Styx Investors is the only party defendant to this appeal.

from an eminent domain taking, not its value to the condemnor, is the measure of the loss to the condemnee. The court did not include in its damages award, as a loss to the condemnee, the value of the seized property attributable to its location next to other premises for which an assemblage was likely.

In its memorandum of decision, after first citing the general rule measuring damages by loss to the condemnee, the court then went on to hold that "[t]here was no testimony that the condemnee had any viable plans to independently conduct an apartment building on the site. Any such consideration would be mere speculation. The assemblage theory advanced here by the condemnee is based solely upon value being created by the condemnation. This cannot be accepted."

We disagree with the court's conclusion that the valuation of the seized parcel attributable to a probable assemblage of it with other adjacent parcels hinges on proof that the assemblage likely would be undertaken by the condemnee. Evidence existed prior to the condemnation that the condemned parcel likely would be assembled by the condemnor or others with the adjoining property. This evidence was pertinent, and we disagree with the trial court that the application of the assemblage doctrine depended on proof that the assemblage would be done by the condemnee. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.

The court's August 4, 2004 memorandum of decision reveals the following facts: "The city of Norwich, a municipal corporation organized and existing under the laws of the state of Connecticut, acting through its redevelopment agency, adopted a redevelopment plan for the downtown Norwich district pursuant to chapter 130 of the Connecticut General Statutes.

"On September 24, 2001, the agency amended its plan and specifically identified certain properties located within the district to be acquired by the city as critical to the implementation of the plan.

"The real property located at 198-202 Main Street, Norwich, in the district, was specifically identified in the plan as a critical parcel to be acquired in furtherance of the plan. In accordance with the applicable provisions of chapter 130 of the General Statutes of Connecticut and the charter of the city of Norwich, the governing body on October 21, 2002, approved by resolution the acquisition of the property through the powers of eminent domain for the purposes of redevelopment and urban renewal after finding that the acquisition of the property was necessary and critical to the plan.

"The condemnor determined that the amount of compensation to be paid to persons entitled to such compensation for the property was $16,000. On January 29, 2003, the condemnor filed with the clerk of the judicial district of New London a statement of compensation containing a description of the property situated on the northerly side of Main Street in the city of Norwich, known as 198-202 Main Street and more particularly bounded and described in such statement of compensation together with a check in the amount of $16,000 . . . ."

The condemnee filed with the trial court an appeal and application for review of the statement of compensation filed by the city of Norwich. The trial court permitted the admission of evidence of assemblage through appraisers, stating: "I think that they should have an opportunity to introduce the evidence." John J. Galvin, Jr., appraiser for the condemnee, testified that the highest and best use of the condemnee's parcel was assemblage with the adjacent property, on which the Wauregan Hotel was located. He stated that it was well

known that the Wauregan Hotel was being developed and that "for years it was known what was next door to it, so it would be purchased . . . it would be assembled." Galvin further testified that his appraisal report was based on such an assemblage. The condemnee's appraisers determined that the "as is" value of the property as of the date of the taking, assuming no assemblage, was $20,000, and the value of the property based on its assemblage with the adjacent property was $95,000. At the conclusion of trial, the condemnor stated that $20,000 would be an acceptable figure for the condemnation. The court rendered judgment assessing damages for the condemnation at $20,000. The court determined that the assemblage doctrine was not applicable because there was no testimony that the condemnee had any viable plans independently to "conduct an apartment building on the site," and "any such consideration would be mere speculation." This appeal followed.

At the outset, we set forth the appropriate standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

An owner whose property is taken for public use is entitled to just compensation in accordance with the constitutional requirements. See U.S. Const., amend. V; Conn. Const., art. I, § 11. It is well settled that "[t]he amount that constitutes just compensation is the mar-

ket value of the condemned property when put to its highest and best use at the time of the taking. . . . In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land . . . . In determining its highest and best use, the trial referee must consider whether there was a reasonable probability that the subject property would be put to that use in the reasonably near future, and what effect such a prospective use may have had on the property's market value at the time of the taking." (Citations omitted; internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 828–29, 776 A.2d 1068 (2001). "The general rule is that the loss to the owner from the taking, and not its value to the condemnor, is the measure of the damages to be awarded in eminent domain proceedings." *Gray Line Bus Co.* v. *Greater Bridgeport Transit District*, 188 Conn. 417, 427, 449 A.2d 1036 (1982).

However, " '[t]he doctrine of assemblage applies when the highest and best use of separate parcels involves their integrated use with lands of another. Pursuant to this doctrine, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable. If applicable, this doctrine allows a property owner to introduce evidence showing that the fair market value of his real estate is enhanced by its probable assemblage with other parcels.' 4 P. Nichols, Eminent Domain (3d Ed. Rev. 2000, P. Rohan & M. Reskin, eds.) § 13.02 [9]." *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 120–21, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003).

"Our Supreme Court recently accepted the applicability of the assemblage doctrine for valuation purposes in the context of a condemnation case. See *Commis-*

*sioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 767 A.2d 1169 (2001). In *Towpath Associates* . . . it appears that the concept of assemblage was implicit in the trial court's analysis, rather than explicitly applied. . . . According to the Supreme Court, [t]he fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. . . . There must be a reasonable [probability] that the owner could use this tract together with the other [parcels for such] purposes or that another could acquire all lands or easements necessary for that use. . . .

"[I]f a prospective, integrated use is the highest and best use of the land, can be achieved only through combination with other parcels of land, and combination of the parcels is reasonably probable, then evidence concerning assemblage, and, ultimately, a finding that the land is specially adaptable for that highest and best use, may be appropriate. . . . The consideration of a future change in the use of the parcel taken and the effect that such a change may have on the market value at the time of the taking has long been recognized in Connecticut, and the use of property in conjunction with other parcels may affect value if it is shown that such an integrated use reasonably would have occurred in the absence of the condemnation." (Internal quotation marks omitted.) *New London* v. *Picinich*, 76 Conn. App. 678, 685–86, 821 A.2d 782, cert. denied, 266 Conn. 901, 832 A.2d 64 (2003).

However, "the condemnor is not required to pay the landowner for elements of value that may arise solely by virtue of the condemnation." *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 542. Additionally, "[a] landowner must provide the trier with sufficient evidence from which it could

conclude that it is reasonably probable that the land to be taken would, but for the taking, be devoted to the proposed use by a prudent investor in the near future. . . . The uses to be considered must be so reasonably probable as to have an effect on the present market value of the land. Purely imaginative or speculative value should not be considered." (Internal quotation marks omitted.) Id., 544.

The condemnee claims that the court acted improperly by rejecting the assemblage value and finding the doctrine inapplicable. The court held that "[t]here was no testimony that the condemnee had any viable plans to independently conduct an apartment building on the site. Any such consideration would be speculation. The assemblage theory advanced here by the condemnee is based solely upon value being created by the condemnation. This cannot be accepted." On appeal, the condemnee argues that the assemblage of the condemnee's parcel with the adjacent Wauregan Hotel was "reasonably probable"; see id., 549–50; and the value of the assemblage was not created by the condemnation because the Wauregan project was underway before the condemnation occurred and plans for the assemblage were on file with the city prior to the date of the taking. The condemnee further argues that the property owner whose land is seized is not required to show that it would undertake the assemblage itself, but only that it was likely that such an assemblage would occur. We agree.

In exercising our plenary review of the court's implicit conclusion that *Towpath* required the condemnee as owner of 198-202 Main Street to have viable plans to "independently conduct an apartment building on the site," we analyze the language used by the majority in *Towpath* in light of the evidence that was before the court.

We first address the court's finding that there was no evidence that would warrant a finding that it was reasonably probable that the condemnee property owner would develop an apartment house on the condemned property. We agree that this factual finding is not clearly erroneous. We disagree, however, that this finding could be dispositive of whether the court could award enhanced value because of the likelihood of use of the condemnee's parcel in assemblage with the adjoining parcel on which the Wauregan Hotel was located. This is so because the majority in *Towpath*, citing *Olson* v. *United States*, 292 U.S. 246, 256–57, 54 S. Ct. 704, 78 L. Ed. 1236 (1934), specifically held that in making an award of compensation, the court may consider the reasonable probability that the highest and best use of the parcel may be made when that highest and best use "requires an assemblage" not just by the condemnee. Significantly, our Supreme Court held that in considering the effect of assemblage value on the highest and best use, a court must consider "that *another* could acquire all lands or easements for that use." (Emphasis added; internal quotation marks omitted.) *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 548.

In *Towpath*, our Supreme Court held that the trial court's determination that the highest and best use of the properties as a bridge site was speculative because the evidence in the record did not support adequately a reasonable probability that, but for the taking, the properties would have been used for their purported highest and best use as a bridge site. Id., 529. As the condemnee stated during oral argument in this case: "The problem they had [in *Towpath*] was they only had one abutment, no railroad, and no train . . . . [C]reating a railroad to create a train bridge to give you a higher valuation is a bit speculative."

However, assemblage, in this case, was not speculative as it was in *Towpath*, because in this case there was evidence in the record from the condemnee's appraiser that assemblage of the condemnee's parcel with the abutting Wauregan Hotel was reasonably probable. There was testimony at trial that the owner of the Wauregan Hotel had plans prior to the taking by eminent domain of the condemnee's parcel to use that condemned parcel in its renovation efforts. Galvin testified that he based his appraisal on plans he found filed in the planning office of the city of Norwich in 2001 and 2002, well before the condemnation, and that the condemnee's parcel was to be used by the adjoining hotel to support a stairwell and a twelve unit apartment building. Galvin's written appraisal report also referenced these plans. Although there was no evidence that the condemnee independently had any viable plans to build or to operate an apartment building on the condemned site, the court failed to take into account evidence that the owner of the adjoining hotel planned, prior to the taking, to use that parcel in an assemblage in its renovation efforts.[2] The testimony concerning these plans was evidence that there was a "reasonable probability" that the condemned property would be used in the near future by the owner of the parcel on which the hotel was located. See *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 540. As stated in *Towpath*, "[t]he paramount law intends that the condemnee shall be put in as good condition pecunarily by just compensation as he [or she] would have been in had the property not been taken." (Internal quotation marks omitted.) Id. If the land had not been taken, then the Wauregan Hotel would have had to enter into a market transaction with the condemnee in order to acquire the parcel adjacent to the hotel in furtherance

---

[2] We note, however, that the actual plan documents were not submitted into evidence.

of its plans. The trial court, in not considering the likelihood of assemblage by another adjoining property owner, failed to award just compensation because "[t]he amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. . . . The fair market value is the price that a *willing buyer would pay a willing seller* . . . for such optimum use." (Emphasis added; internal quotation marks omitted.) Id. As the United States Supreme Court held in *Olson* v. *United States*, supra, 292 U.S. 246, "to the extent that probable demand by *prospective purchasers or condemnors* affects market value, it is to be taken into account." (Emphasis added.) Id., 256.

The value given to the condemnee's parcel as a result of its reasonably probable assemblage with the abutting hotel site does not impermissibly arise by virtue of the condemnation. There was evidence at trial that the plans to assemble were in place *prior to* the taking to enhance development of the adjoining Wauregan Hotel site. If anything, the condemnation eliminated any possible market transaction between the condemnee and the owner of the Wauregan Hotel parcel, which, in light of the plans filed with the city planning department showing development of the hotel parcel using both properties, would probably have occurred had the condemnation not occurred.

We therefore must remand the case for a new hearing at which the court, in assessing the loss to the condemnee, should consider and take into account any evidence of assemblage plans by the condemnor or another adjoining owner insofar as the court finds that probable demand by prospective purchasers or condemnors affects market value.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.