CITY OF NEW LONDON *v.* THOMAS J.
PICINICH ET AL.
(AC 22750)

Schaller, Mihalakos and Bishop, Js.

Argued November 18, 2002—officially released May 20, 2003

*Scott W. Sawyer,* for the appellant (named defendant).

*Edward B. O'Connell,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The named defendant, Thomas J. Picinich,[1] appeals from the judgment rendered by the trial court in favor of the plaintiff, the city of New London, pursuant to the defendant's appeal and application for review of a statement of compensation for condemnation. On appeal, the defendant claims that the trial court improperly determined the highest and best use of the condemned property. In support of this claim, the defendant argues that in valuing the property, the trial court (1) failed to consider the value of the subject property as assembled with nearby properties, (2) improperly concluded that at the time of the taking, the condemned parcel's ultimate use as a city road was too speculative and (3) failed to view the property pursuant to General

---

[1] The defendant Thomas Picinich is the only defendant involved in this appeal. We refer in this opinion to Picinich as the defendant.

Statutes § 8-132.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. This is an eminent domain action regarding real property located at 237 Howard Street, New London (subject property). The subject property was a two-family home with a third-floor apartment.[3] The subject property is currently used as "a road in a roundabout that was part of a municipal development plan [development plan]."[4] The location of the lot runs between the former alignment of Howard Street and the former section of Harris Street.

Pursuant to General Statutes § 8-129, the plaintiff, acting through the New London Development Corporation (development corporation), commenced this eminent domain action on May 17, 2000, with the filing of a statement of compensation in which the plaintiff determined the fair market value of the subject property to be $130,000.[5] The plaintiff based its valuation on an

---

[2] On appeal, the defendant raises an argument, in support of his claim, that the trial court failed specifically to articulate the highest and best use of the property in its memorandum of decision. The mere fact that the memorandum of decision does not explicitly state the highest and best use does not, as the plaintiff argues, necessarily imply that the court did not consider the property's highest and best use. If the defendant required clarification on this issue, it was incumbent on him to seek an articulation of the court's ruling. See Practice Book § 66-5.

[3] At the time of the taking, the third-floor apartment was not in a condition suitable for leasing. To lease the apartment, a variance and numerous modifications would have been required.

[4] Other similar neighboring properties were used to make improvements to this road for widening efforts, aesthetics and roundabouts.

[5] The procedures for condemning land where property is taken by a redevelopment agency are controlled by General Statutes §§ 8-128, 8-129, 8-129a, 8-130, 8-131, 8-132, 8-132a and 8-133. "The procedures required by those enumerated sections include: determining the compensation to be paid to the condemnee and filing a statement of compensation with the clerk of the Superior Court; General Statutes § 8-129; filing a deposit as provided in General Statutes § 8-130 with the clerk of the Superior Court; General Statutes § 8-129; giving notice to all persons appearing of record as a property

appraisal prepared by Steven Flanagan.[6] In compliance with General Statutes § 8-130, the plaintiff deposited $130,000 with the clerk of the Superior Court. The plaintiff filed a certificate of taking on June 20, 2000. On or about September 7, 2000, the defendant provided the plaintiff with a copy of an appraisal report, prepared by William Henry, indicating a $223,000 fair market value for the subject property as of the date of the taking.[7]

owner affected by the condemnation or as a holder of any encumbrance on such property or interest therein; General Statutes § 8-129; and causing a certificate of taking to be recorded in the office of the town clerk. General Statutes § 8-129." *AvalonBay Communities, Inc.* v. *Orange,* 256 Conn. 557, 587, 775 A.2d 284 (2001).

[6] Flanagan appraised the subject property on multiple occasions between 1999 and 2000. In arriving at his valuation, he relied on the sales comparison approach. The first appraisal was performed in 1999. At that time, there were no comparable sales in the surrounding areas. Consequently, he compared the subject property to other properties in the development plan area that recently had been sold. The compared homes were in poorer condition than the subject property. To reflect the superior condition of the subject property, Flanagan adjusted his appraisal upward to $124,000.

Over time, the appraisal was again adjusted upward as similar, nearby, properties were sold. Eventually, on June 20, 2000, three similar properties outside the development plan were sold without compulsion. Flanagan indicated that these three properties could have been sold to Pfizer, a private person, the development plan or the development corporation. On the basis of these three sales, the subject property was valued at $130,000.

In his appraisals, Flanagan did not consider comparable properties opposite the Pfizer plant because he labeled those properties "aberration[s]." He considered them aberrations because Pfizer, having acquired a 22 acre waterfront parcel of land for one dollar, offered neighboring owners "two times the 100 percent 1998 assessed value" of the land for land appraised at $60,000. In Flanagan's opinion, Pfizer paid the inflated values because it did not have the power of eminent domain and needed to acquire the land. After 1998, however, Pfizer did not purchase anymore of those neighboring properties.

[7] Henry performed the appraisal, after the taking, on September 5, 2000. In preparing the appraisal, he considered the cost approach, the increment approach and the sales comparison approach. He relied on the sales comparison approach when considering the properties sold on Pequot Avenue and Howard Street. All of those properties were located in the same neighborhood.

Henry described where the subject property would exist, today, in compar-

The defendant filed an appeal and application for review of the statement of compensation on November 29, 2000. The plaintiff filed a motion to dismiss the appeal on December 5, 2000, on the grounds that it was not timely filed and the court lacked subject matter jurisdiction. On April 2, 2001, the court denied the plaintiff's motion to dismiss.

The plaintiff filed a motion for summary judgment, claiming that the defendant's appeal and application for review were barred by the applicable statute of limitations. The motion was denied on December 18, 2001. Two days later, the defendant filed a memorandum for consideration concerning Henry's appraisal.

The court filed its memorandum of decision and rendered judgment on January 17, 2002. Considering the arguments and testimony from appraisers representing both parties, the court noted that the defendant's witness appeared to provide conflicting and inconsistent testimony. Specifically, the court, in its memorandum of decision, stated: (1) Henry, the defendant's appraiser, compared a gasoline station to a dwelling house; (2) the

ison to the road. He indicated that it would exist "approximately where the rotary is now at Howard Street going towards the new Pfizer research center, and the state park, and . . . Fort Trumbull. . . . [It is] [a]lmost in the middle of the rotary, not quite." The property existed 500 feet from where the Pfizer property is now located. The dwelling structure on the subject property was razed for road widening. Because the subject property would have existed in the middle of the rotary which fed into Howard Street and Pequot Avenue, Henry considered the sale prices of seven properties located at: 5 Pequot, a two-family home; 51 Pequot, a single-family dwelling; 11 Pequot, a two-family dwelling; 71 Pequot, a single-family dwelling; 175 Howard, a gas station; 185 Howard, a three-story dwelling with apartments; and 209 Howard, a mixed use of office and apartment building. Henry chose these properties for comparative purposes because in his opinion, they were good indicators of the subject property's value. He was able to view the actual properties of only seven of the properties. For the other two properties, he could only view the street cards. Of these seven properties, Henry chose the property located at 11 Pequot as the ideal comparative property, adjusting it downward by fifteen percent, and arrived at a value of $223,000.

appraiser was unable to view some of the comparable properties and, instead, relied on public records for comparative purposes; and (3) one of the properties used by the defendant's appraiser actually consisted of two properties. In light of the evidence presented, the court concluded that Flanagan, the plaintiff's appraiser, provided the most accurate valuation figure. Accordingly, the court valued the property at the time of the taking at $130,000. The defendant appealed.[8] Additional facts will be provided as necessary.

At the outset, we first set forth the appropriate standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 826–27, 776 A.2d 1068 (2001).

An owner whose property is taken for public use is entitled to just compensation in accordance with constitutional requirements.[9] *Connecticut Printers, Inc.* v. *Redevelopment Agency*, 159 Conn. 407, 410, 270 A.2d 549 (1970). The usual measure of just compensation is "a fair equivalent in money for the property taken as nearly as its nature will permit." (Internal quotation marks omitted.) *Stanley Works* v. *New Britain Redevel-*

---

[8] The appeal was timely filed. The defendant appealed on February 5, 2002, from the January 17, 2002 decision. Thereafter on March 5, 2002, the defendant moved for permission to file an amended appeal based on an improper designation of the parties on the appeal form. The motion was granted, and a corrected appeal form was filed.

[9] See U.S. Const., amend. V; Conn. Const., art. I, § 11.

*opment Agency*, 155 Conn. 86, 102, 230 A.2d 9 (1967). Fair market value is an appropriate measure of just compensation. See id. When determining fair market value, it is appropriate to consider "the price that would probably result from fair negotiations between a willing seller and a willing buyer, taking into account all the factors, including the highest and best or most advantageous use, weighing and evaluating the circumstances, the evidence, the opinions expressed by the witnesses and considering the use to which the premises have been devoted and which may have enhanced its value." (Internal quotation marks omitted.) *Feigenbaum* v. *Waterbury*, 20 Conn. App. 148, 151, 565 A.2d 5 (1989).

When determining the fair market value of property for just compensation purposes, however, "only those factors in existence on the date of the taking may be considered by the trier." *Stanley Works* v. *New Britain Redevelopment Agency*, supra, 155 Conn. 102; see also *Textron, Inc.* v. *Commissioner of Transportation*, 176 Conn. 264, 267, 407 A.2d 946 (1978). The date of taking is the date on which the condemnor records the certificate of taking. See *Stanley Works* v. *New Britain Redevelopment Agency*, supra, 103. Here, the certificate of taking was filed on June 20, 2000. Therefore, the court could consider only those factors pertinent to a determination of fair market value existing as of June 20, 2000.

I

The defendant claims that the court improperly determined the subject property's highest and best use value. The defendant initially argues that when determining the highest and best use of the land for valuation purposes, the trial court must consider the potential value of the subject property when assembled with neighboring properties. In support of this argument, the defendant claims that the trial court failed to consider

other properties that were condemned as part of the development plan and purchased by Pfizer.

This is an issue of valuation. Valuation is a matter of fact to be determined by the trier's independent judgment. See *Bridge Street Associates* v. *Water Pollution Control Authority*, 15 Conn. App. 140, 147, 543 A.2d 1351 (1988). Because this is a challenge to the court's finding of facts, we apply the clearly erroneous standard of review. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 70, 699 A.2d 101 (1997). It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony. *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002).

"The doctrine of assemblage applies when the highest and best use of separate parcels involves their integrated use with lands of another. Pursuant to this doctrine, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable. If applicable, this doctrine allows a property owner to introduce evidence showing that the fair market value of his real estate is enhanced by its probable assemblage with other parcels. . . .

"Our Supreme Court recently accepted the applicability of the assemblage doctrine for valuation purposes in the context of a condemnation case. See *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 767 A.2d 1169 (2001). In *Towpath Associates* . . . it appears that the concept of assemblage was implicit in the trial court's analysis, rather than explic-

itly applied. . . . According to the Supreme Court, [t]he fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. . . . There must be a reasonable [probability] that the owner could use this tract together with the other [parcels for such] purposes or that another could acquire all lands or easements necessary for that use. . . .

"[I]f a prospective, integrated use is the highest and best use of the land, can be achieved only through combination with other parcels of land, and combination of the parcels is reasonably probable, then evidence concerning assemblage, and, ultimately, a finding that the land is specially adaptable for that highest and best use, may be appropriate. . . . The consideration of a future change in the use of the parcel taken and the effect that such a change may have on the market value at the time of the taking has long been recognized in Connecticut, and the use of property in conjunction with other parcels may affect value if it is shown that such an integrated use reasonably would have occurred *in the absence of the condemnation*." (Citations omitted; emphasis added; internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 120–21, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002).

The defendant offers no evidence to support the proposition that at the time of the taking, it was reasonable to conclude that the subject property would have been assembled with other like properties to create a road, despite the condemnation. In his brief, the defendant states that the highest and best use of the subject property contemplates the assemblage of property for road widening and improvements along Pequot Avenue and Howard Street. The defendant's appraiser, Henry, val-

ued the land on only one occasion, which occurred after both the taking and the transformation of the subject property into a road. It was not until September, 2000, which was after the taking, that Henry contemplated the assemblage value.[10] By contrast, Flanagan appraised the subject property for the plaintiff on more than one occasion between 1999 and 2000. As of the date of the taking, Flanagan valued the land at $130,000.

Having listened to this testimony, the trial court concluded that Flanagan's appraisal values were the more accurate of the two.[11] The most striking distinction between the valuations is that Henry never calculated the assemblage value of the property until after the taking. Moreover, he failed to consider homes that were immediately adjacent to the subject property and that were also scheduled for demolition due to road widening under the development plan. Instead, he selectively chose seven homes, some of which had been purchased directly by Pfizer for Pfizer-specific purposes at greatly

---

[10] Henry testified that (1) if the property had not been taken, he would only compare the subject property to other non-taken properties; (2) in such cases he would only compare the structures existing on the properties; and (3) that the mere announcement of a development plan increases the value of the property. The defendant offers no evidence showing that the plaintiff's appraiser did not consider these factors when appraising the subject property; rather, the defendant merely presumes that he did not.

[11] Despite the defendant's argument to the contrary, it is proper for the trial court to take into consideration, for valuation purposes, the credibility of the witnesses. See *D'Addario* v. *Commissioner of Transportation*, 180 Conn. 355, 366, 429 A.2d 890 (1980). In eminent domain proceedings, a trial court enjoys a large degree of discretion in valuing property. See *Franc* v. *Bethel Holding Co.*, supra, 73 Conn. App. 126. In its memorandum of decision, the court noted that "[b]oth parties . . . presented evidence and argument including the introduction of exhibits relating to their appraisal of the value of the property." Testimony was heard by appraisers representing both parties. The appraisers were given an opportunity to explain, in detail, their appraisal methodologies. On the basis of this testimony, the court, in its memorandum, noted that the defendant's witness appeared to provide conflicting and inconsistent testimony. For example, the property that Henry used as the ideal comparative property, located at 11 Pequot Avenue, consisted of two parcels of land instead of one.

inflated prices, for comparative purposes. Therefore, based on Flanagan's testimony, at the time of the taking, it was not reasonable to conclude that the property would be combined with other properties to develop a road. The settled rule on the matter of just compensation is that "the question is what has the owner lost, not what has the taker gained." *Boston Chamber of Commerce* v. *Boston*, 217 U.S. 189, 195, 30 S. Ct. 459, 54 L. Ed. 725 (1910).

The court, having weighed this evidence and having assessed the credibility of the witnesses, determined that it was not proper to consider the other properties assembled to create the roadway for valuation of the subject property. On the basis of the proffered testimony, we find that the court's valuation was not clearly erroneous.

## II

Next, the defendant argues that because the condemned property was ultimately used as part of the road, such facts should not have been dismissed by the trial court as being too speculative. In essence, the defendant argues that the trial court should have taken into account the fact that the subject property, while never before used as a road, should inherit an increased highest and best use valuation, retroactively, merely because it was similarly positioned to neighboring and nearby land that was ultimately used to develop a road. We decline to follow the defendant's line of reasoning.

"[I]n the eminent domain context, the special adaptability of land for a particular purpose will only be properly considered in valuation if there is a reasonable probability that the land could be so used within a reasonable time and with economic feasibility." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 27, 807 A.2d 955 (2002). That is, the use must not be speculative. It has also been recognized that although a use may be possi-

ble, that possibility must be reasonably probable. "Wishful thinking, optimistic conjecture, speculation, rumor and unfounded prognostications do not furnish a proper basis for a finding that a litigant has proved the reasonable probability of a future change . . . . Because of the uncertainties necessarily attending the determination of the probability of the happening of such an event in the future, claims and evidence regarding the probability must be scrutinized with care and examined with caution. Nevertheless, if such a reasonable probability is proved, it is a proper fact to be considered in the determination of the fair value of property taken by condemnation proceedings." *Budney* v. *Ives*, 156 Conn. 83, 89–90, 239 A.2d 482 (1968).

When determining whether a use is speculative, courts will look to neighboring lands to search for evidence indicating that neighboring landowners are using similar land in a similar purpose to the proposed use. See generally *Connecticut Printers, Inc.* v. *Redevelopment Agency*, supra, 159 Conn. 411–13. In *Connecticut Printers, Inc.*, the plaintiff, an owner of a printing plant, wanted the court to take into account the use of the building as an element of valuation after a government taking. Id., 411–12. The trial referee determined, and our Supreme Court affirmed, that the building's highest or best use was not as a printing plant because the plaintiff offered no evidence indicating that anyone would lease or build such a plant at that precise location on the date of the taking. Id., 413.

As we previously have stated, the valuation of a property is based on the property's fair market value *at the time of the taking,* which, in this case, occurred on June 20, 2000. See *Toffolon* v. *Avon*, 173 Conn. 525, 529, 378 A.2d 580 (1977); *Laske* v. *Hartford*, 172 Conn. 515, 519, 375 A.2d 996 (1977). While the defendant correctly notes that assemblage may be taken into consideration by an appraiser when determining a property's highest and best use, the issue to be addressed for valuation

purposes is not the value of property for uses that would be implemented *if* the road was eventually constructed. Rather, the issue is the value of the property at the time of taking as it is affected by the probability of a road being built. See *Heath* v. *Commissioner of Transportation*, 175 Conn. 384, 388, 398 A.2d 1192 (1978).

To consider the probability aspect of this inquiry, it is necessary that at the time of the taking, the probability of the road being built must have been at least foreseeable. Here, the defendant's appraiser indicated that he did not appraise the property until September, 2000. At that time, he appraised the subject property at $223,000. In arriving at this value, Henry could only have reasoned backward because the taking occurred in June, 2000. In doing so, he determined that the purpose of the taking was for a development plan or highway and assigned that as a highest and best use of the property on the date of the taking, where he normally would have, as he testified, focused on the buildings (condition and size) on the land and not solely on the use of the bare land itself. In the appraisals by Flanagan, which were completed before September, 2000, the value of the land was assessed at $130,000. The defendant offered no evidence of either the value of the land at the time of the taking or the reasonable probability of the land being redeveloped into a road at, or before, the time of the taking.

In light of the foregoing, we conclude that the trial court's determination that the future use of the property was too speculative to be considered in the determination of the highest and best use of the property was not clearly erroneous.

III

The defendant's final argument is that the trial court's valuation was inherently flawed because the court failed to follow its statutory obligation, pursuant to

General Statutes § 8-132, actually to view the property.[12] Had the referee viewed the property for himself, the defendant argues, the court would have been obligated to consider the fact that the property was already being used as a road when determining the property's highest and best use. We disagree.

In condemnation hearings, the state referee "sitting as a court [of] appeals . . . is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of [our Supreme Court] with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." *Birnbaum* v. *Ives*, 163 Conn. 12, 21, 301 A.2d 262 (1972).

The duty of the court under the statute is to make an independent determination of value. Viewing the property is only one of many means by which a court can determine the property's value. "We have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath. They are in fact *supplemental* evidence. . . . The purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. . . . Ultimately, the determination of the value of the land depend[s] on the considered judgment of the referee, taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 20.

---

[12] We note that court did in fact indicate that it was familiar with the subject property's area.

The fact that in this instance the court did not attempt to view the property to gather supplemental evidence is not fatal. In *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, supra, 256 Conn. 830 n.11, the parties stipulated to waive their rights for a personal viewing of the property by the court. The parties agreed that "the extensive rehabilitative changes that had occurred since the taking" resulted in the property being "in a substantially different state than at the time of taking . . . ." Id. The court agreed and did not view the property because a visit by the court for a personal viewing would not have been probative with respect to the court's determination of just compensation. Id. Therefore, although the trial court had failed to comply with the statute, under the circumstances, such noncompliance was harmless. Id.; see also *D'Addario* v. *Commissioner of Transportation*, supra, 180 Conn. 366 (trier of fact *may* rely on visual observations to supplement evidence).

Like the property in *Northeast Ct. Economic Alliance, Inc.*, the subject property no longer existed in the same condition as it did at the time of taking. At the time of taking, the subject property contained a two-family dwelling with a third-floor apartment. By the time the court would have been able to view the property, the property was changed. The dwelling had been razed and the land was now part of a city roadway and roundabout. Because the valuation must be based on the highest and best use of the property at the time of the taking, even if the court had viewed the property in its altered state, this supplemental evidence would not have been relevant to the court's inquiry. Under these circumstances, the court's failure to view the property was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.