ROUTE 188, LLC *v.* TOWN OF MIDDLEBURY
(AC 26046)

Dranginis, Flynn and Bishop, Js.

Argued October 24, 2005—officially released January 10, 2006

*Robert W. Smith,* for the appellant (defendant).

*Frederick W. Krug,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, the town of Middlebury, appeals from the trial court's judgment determining the fair market value of certain real property owned by the plaintiff, Route 188, LLC. On appeal, the defendant claims that the court improperly (1) determined that the plaintiff was aggrieved, (2) declined to consider the doctrine of assemblage in determining the usable number of acres and the fair market value of the plaintiff's property and (3) relied on the per acre value of the plaintiff's appraiser's where the appraiser did not adjust for unusable land on any of the comparable sales that he used. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The plaintiff acquired the subject property as part of the purchase of a larger parcel of land on July 1, 1997. The subject property is designated as lot 63 on the Middlebury tax assessor's map and consists of 22.63 acres of unimproved land, including more than seventeen acres of wetlands. The western portion of the property consists of two acres

that is the prime building location. Those two acres are connected to the remainder of the parcel by a narrow corridor of land to the southwest of lot 64. Lot 64, which is also owned by the plaintiff, is a one acre parcel that nearly bisects lot 63. The parcel has a minimum lot size of five acres for building purposes. The defendant's zoning regulations permit the use of up to 25 percent of the wetlands area in calculating the five acres. The regulations permit light industrial and commercial uses.

The property was valued by the Middlebury tax assessor at $164,342 on the grand lists of October 1, 2002, 2003 and 2004. The plaintiff's challenge to that valuation was denied by the Middlebury board of assessment appeals. Pursuant to General Statutes § 12-117a, the plaintiff appealed to the Superior Court.

At trial, both parties presented expert testimony as to the proper valuation of the property. The plaintiff's expert calculated the property's value to be $80,000. The defendant's expert calculated the property's value at $180,000. By memorandum of decision, the court found the value of the property was $92,000 and rendered judgment accordingly. This appeal ensued. Additional facts will be set forth as necessary.

Before addressing the merits of the defendant's claims, we first set forth the well settled legal principles underlying a § 12-117a tax appeal, as well as our applicable standard of review. "In § 12-117a tax appeals, the trial court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the [taxpayer's] property. . . . At the de novo proceeding, the taxpayer bears the burden of establishing that the assessor has overassessed its property. . . . Once the taxpayer has demonstrated aggrievement by proving that its property was overassessed, the trial court [will] then undertake a further inquiry to determine the amount of the reassessment that would be

just. . . . The trier of fact must arrive at [its] own conclusions as to the value of [the taxpayer's property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value . . . ." (Internal quotation marks omitted.) *Aetna Life Ins. Co.* v. *Middletown*, 77 Conn. App. 21, 26, 822 A.2d 330, cert. denied, 265 Conn. 901, 829 A.2d 419 (2003).

"We review a court's determination in a tax appeal pursuant to the clearly erroneous standard of review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 811–12, 875 A.2d 71 (2005).

With those principles in mind, we turn to our resolution of the claims raised in the defendant's appeal.

I

As a threshold matter, the defendant claims that the court improperly found that the plaintiff was aggrieved. Specifically, the defendant contends that the court improperly found aggrievement because the plaintiff's claims of overassessment were based on an appraisal report that failed to apply the doctrine of assemblage. We disagree.

At the outset, we note that the defendant has not cited any Connecticut case law that requires the application of the doctrine of assemblage in valuing property, and we have not found any support for such a mandate.[1] "Valuation is a matter of fact to be determined by the trier's independent judgment." *New London* v. *Picinich*, 76 Conn. App. 678, 685, 821 A.2d 782, cert. denied, 266 Conn. 901, 832 A.2d 64 (2003). "In actions requiring such a valuation of property, the trial court is charged with the duty of making an independent valuation of the property involved. . . . [N]o one method of valuation is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. . . . [T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has broad discretion in reaching such conclusion, and [its] determination is reviewable only if [it] misapplies or gives an improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 120, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003).

When determining fair market value, it is appropriate to consider "the price that would probably result from fair negotiations between a willing seller and a willing buyer, taking into account all the factors, including the highest and best or most advantageous use, weighing and evaluating the circumstances, the evidence, the opinions expressed by the witnesses and considering

---

[1] We address the propriety of the court's decision not to apply the doctrine of assemblage.

the use to which the premises have been devoted and which may have enhanced its value." (Internal quotation marks omitted.) *New London* v. *Picinich*, supra, 76 Conn. App. 684.

The defendant argues that the failure of the plaintiff's appraiser to take into account the enhanced assemblage value of lot 63, when combined with lot 64 for development purposes, makes his value conclusions inaccurate and therefore provides no evidentiary basis for the court's finding of overvaluation or aggrievement. The defendant claims that because the plaintiff bears the burden of establishing aggrievement, the court may consider the plaintiff's evidence only in determining that threshold issue. At the close of the plaintiff's case-in-chief, if the defendant believed, as it now claims, that the plaintiff had failed to establish overvaluation, the defendant could have sought a dismissal pursuant to Practice Book § 15-8.[2] It chose not to do so. Although the plaintiff had the burden of proof as to the court's determination of whether the defendant had overvalued the plaintiff's property, the defendant's characterization of the evidence that the court could have considered in making that determination is misguided. This court has noted: "Because a tax appeal is heard de novo, a trial court judge is privileged to adopt whatever testimony he reasonably believes to be credible. . . . This principle applies not only to the trial court's determination of the true and actual value of taxable property, but also to its determination of whether the plaintiff has satisfied the burden of establishing overvaluation. . . . Because the burden of proving overvaluation rested on the plain-

---

[2] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion, the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

tiff, the [city] was under no obligation to submit expert evidence in support of its valuation. Having submitted such evidence, however, the [city] cannot circumscribe its significance or prevent the trial court from relying on it for substantive purposes." (Citation omitted; internal quotation marks omitted.) *Aetna Life Ins. Co.* v. *Middletown*, supra, 77 Conn. App. 28–29.

It is clear from the record that the court did not base its valuation of the plaintiff's property solely on the testimony of the plaintiff's appraiser. An examination of the court's memorandum of decision reveals that it did not accept fully the valuation of either party's expert. The court appropriately conducted its own independent valuation of the plaintiff's property, including its own analysis of whether the doctrine of assemblage should be applied. The decision of the plaintiff's appraiser not to apply assemblage in valuing the plaintiff's property was not vital to the court's determination that the plaintiff's property was overassessed. Accordingly, we conclude that the court's finding of aggrievement was not clearly erroneous.

## II

The defendant also claims that the court improperly failed to consider the doctrine of assemblage in determining the number of usable acres and the fair market value of the plaintiff's property. We disagree.

"The doctrine of assemblage applies when the highest and best use of separate parcels involves their integrated use with lands of another. Pursuant to this doctrine, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable. If applicable, this doctrine allows a property owner to introduce evidence showing that the fair market value of his real estate is enhanced by its probable assemblage with other parcels. . . .

"Our Supreme Court recently accepted the applicability of the assemblage doctrine for valuation purposes in the context of a condemnation case. See *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 767 A.2d 1169 (2001). In *Towpath Associates* . . . it appears that the concept of assemblage was implicit in the trial court's analysis, rather than explicitly applied. . . . According to the Supreme Court, [t]he fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. . . . There must be a reasonable [probability] that the owner could use this tract together with the other [parcels for such] purposes or that another could acquire all lands or easements necessary for that use." *New London* v. *Picinich*, supra, 76 Conn. App. 685–86.

The defendant claims that the court's finding that the plaintiff's property only has two usable acres is clearly erroneous because the court did not combine lot 63 with lot 64, which the defendant claims would have increased the value of lot 63. In considering the doctrine of assemblage, the court found that the tax assessor did not value the property on the basis of assemblage and that the assessor taxed the lots separately. Neither the plaintiff's appraiser nor the defendant's appraiser applied assemblage in reaching their opinions on valuation, and the plaintiff's appraiser testified that the application of assemblage would be inappropriate because the future use of the lots was speculative. The court agreed, finding that although it is possible that the parcels might be combined in the future, the evidence did not support a finding that it was reasonably probable. Both appraisers agreed that the highest and best use of the property is for limited industrial use. Neither of them testified that the highest and best use is to be

joined with lot 64. On the basis of the foregoing, we conclude that the court's determination not to apply assemblage is adequately supported by the record.

### III

The defendant finally claims that the court improperly accepted the per acre value of the plaintiff's appraiser of $40,000 where that value was based on an appraisal report that did not adjust for unusable land on any of the comparable sales used. The defendant argues that some of the comparable sales he used were also encumbered by wetlands, as is the plaintiff's property, and that if the plaintiff's appraiser had discounted the wetlands, subtracting unusable acreage from the overall lot sizes, the resulting division of only usable acreage into the purchase price would yield an increase in the per acre values. As noted, this court's role is not to retry the facts of the case, but to determine if the trial court's conclusion is supported by the record. We conclude that it is.

Both of the appraisers used the comparable sales method valuation, which was adopted by the court. The plaintiff's appraiser valued the property at $40,000 per acre and opined that the property had only two acres capable of development. The defendant's appraiser opined that each acre was worth $45,000 and that there were 3.75 acres capable of being developed. In considering per acre value, the court noted that the assessor had valued the one acre tract that is lot 64 at $40,000. Given those factual underpinnings, we conclude that the court's finding was supported by the record and is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.