ABINGTON, LLC *v.* TOWN OF AVON
(AC 27413)

Flynn, C. J., and Gruendel and Lavine, Js.

Argued February 15—officially released June 12, 2007

*Robert E. Kaelin*, with whom was *Amanda F. Lawrence*, for the appellant (defendant).

*Lisa A. Zaccardelli*, with whom was *Wesley W. Horton*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. This is a tax appeal concerning a portion of an estate atop Talcott Mountain, the highest point in Avon, that commands exceptional views of the Farmington River Valley. The estate is comprised of approximately 93.03 acres of land in Avon and the adjoining town of Bloomfield, of which 60.8 acres are restricted as forest land pursuant to General Statutes § 12-107d (c). The steep slopes on the westerly side of the estate afford it privacy. This appeal concerns only the 65.57 acres of land and improvements located in Avon (property), where the primary residence, three single-family cottages[1] and three barns are located. The primary residence has 6964 square feet of space, exclusive of the basement and garage, with eleven rooms, four of which are bedrooms. We must decide whether the trial court properly determined the fair market value of that portion of the property located in Avon. We conclude that it did and affirm the judgment of the trial court.

---

[1] The cottages cannot be sold or taxed separately because they do not exist as separate lots and have no frontage and, therefore, do not comply with local planning and zoning regulations.

The defendant, the town of Avon, appeals from the judgment of the trial court determining that the total assessed value of the property, which is owned by the plaintiff, Abington, LLC,[2] as of October 1, 2003, was excessive and should have been valued at $3,143,512 instead of $4,294,890. The defendant claims that the court's valuation was clearly erroneous because it allegedly (1) adopted a piecemeal approach in valuing the property (2) based its valuation on dissimilar sales and on a hypothetical property and (3) determined a fair market value that was not supported by the record.

The following facts are relevant to our resolution of the defendant's appeal. On the October 1, 2003 grand list, the Avon assessor determined that the fair market value of the property was $4,294,890. The plaintiff challenged the valuation before the Avon board of assessment appeals (board), claiming that it did not represent the true and actual value of the property. After the board declined to reduce the assessment, the plaintiff filed an appeal to the trial court pursuant to General Statutes § 12-117a.[3]

At trial, the assessor testified as to how he had calculated the fair market value of the property using the cost approach to valuation.[4] He assigned the following values to the property's various components:

---

[2] The plaintiff, Abington, LLC, is a limited liability company holding the property on which Michael Konover and Victoria Konover reside.

[3] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list . . . to the superior court for the judicial district in which such town or city is situated . . . . The court shall have power to grant such relief as to justice and equity appertains . . . ."

[4] There are three accepted methods of valuation that may be used for the assessment of real property. They are the comparable sales approach, the income capitalization approach and the cost approach. *Four D's, Inc.* v. *Mattera*, 25 Conn. App. 308, 315, 594 A.2d 484 (1991).

"The comparable sales approach is also known as the market data approach or sales comparison approach. . . . It is a process of analyzing

| | |
|---|---|
| Primary residence on two acre site | $3,002,740 |
| Three cottages | $466,210 |
| Barns and sheds | $67,430 |
| Land for cottages/sheds/barns | $750,000 |
| Forest land | $8512 |

In addition to testimony from the assessor, the court heard testimony from an expert for the defendant and an expert for the plaintiff as to the proper valuation of the property. The experts for both parties testified at length as to the uniqueness of the property and the variety of valuation methods they had utilized in calculating the property's fair market value. The defendant's expert, Marc P. Nadeau, calculated the property's value at $4,850,000. The plaintiff's expert, Christopher A. Italia, calculated the subject property's value to be $3,050,000. In explaining his approach to valuation, Italia testified that because there were no properties that truly were comparable to the property, he concluded that the most accurate way to value it was to

sales of similar recently sold properties in order to derive an indication of the most probable sales price of the property being appraised. . . . After identifying comparable sales, the appraiser makes adjustments to the sales prices based on elements of comparison." (Citations omitted; internal quotation marks omitted.) *Sun Valley Camping Cooperative, Inc.* v. *Stafford*, 94 Conn. App. 696, 702 n.8, 894 A.2d 349 (2006).

"The income capitalization approach consists of the following seven steps: (1) estimate gross income; (2) estimate vacancy and collection loss; (3) calculate effective gross income (i.e., deduct vacancy and collection loss from estimated gross income); (4) estimate fixed and operating expenses and reserves for replacement of short-lived items; (5) estimate net income (i.e., deduct expenses from effective gross income); (6) select an applicable capitalization rate; and (7) apply the capitalization rate to net income to arrive at an indication of the market value of the property being appraised. . . . The process is based on the principle that the amount of net income a property can produce is related to its market value." (Citation omitted; internal quotation marks omitted.) Id., 702 n.9.

"Under the cost approach, the appraiser estimates the current cost of replacing the subject property with adjustments for depreciation, the value of the underlying land and entrepreneurial profit. . . . This approach is particularly useful in valuing new or nearly new improvements and properties that are not frequently exchanged in the market." (Citation omitted; internal quotation marks omitted.) Id., 702 n.10.

value its component parts. More specifically, Italia concluded that he could consider separately and value independently the property as a primary residence with three acres of land, three houses and excess land. Utilizing the comparative sales approach and the cost approach, Italia valued the primary residence at $2.5 million.

The court issued a memorandum of decision in which it reviewed the testimony of the assessor, Italia and Nadeau. The court explained how it utilized a variety of methodologies in calculating its valuation because the property was one of a kind and contained a variety of components. The court found the value of the property to be $3,143,512, selecting Italia's value for the primary residence, a hybrid value for the cottages and outbuildings and the statutory amount for the forestry land. The court ascribed the following values to the property's different components:

| | |
|---|---|
| Primary residence | $2.5 million |
| Three cottages | $570,000 |
| Barns and sheds | $65,000 |
| 60.8 acres of forest land | $8512 |

This appeal followed. Additional facts will be set forth as necessary.

Before addressing the merits of the defendant's claims, we first set forth the well settled legal principles underlying a § 12-117a tax appeal, as well as our applicable standard of review. "In § 12-117a tax appeals, the trial court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the [taxpayer's] property. . . . At the de novo proceeding, the taxpayer bears the burden of establishing that the assessor has overassessed its property. . . . Once the taxpayer has demonstrated aggrievement by proving that its property was overassessed, the trial

court [will] then undertake a further inquiry to determine the amount of the reassessment that would be just. . . . The trier of fact must arrive at [its] own conclusions as to the value of [the taxpayer's property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value . . . .

"We review the trial court's conclusion in a tax appeal pursuant to the well established clearly erroneous standard of review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 22–23, 807 A.2d 955 (2002). We now address each of the defendant's claims in turn.

I

The defendant first claims that the court improperly adopted a piecemeal approach in valuing the property. In the memorandum of decision, the court explained that because the property was unique, it determined the fair market value of the entire property by combining the value of each of its components. Relying on *National Amusements, Inc.* v. *East Windsor*, 84 Conn. App. 473, 854 A.2d 58 (2004), the defendant asserts that it is not appropriate to divide a single property into

segments and assign a value to each when determining the fair market value of the entire property. We are not persuaded because we conclude that given the absence of comparable property, the court utilized proper valuation methods in determining fair market value.

"Valuation is a matter of fact to be determined by the trier's independent judgment. . . . In actions requiring such a valuation of property, the trial court is charged with the duty of making an independent valuation of the property involved. . . . [N]o one method of valuation is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. . . . [T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has broad discretion in reaching such conclusion, and [its] determination is reviewable only if [it] misapplies or gives an improper effect to any test or consideration which it was [its] duty to regard." (Citation omitted; internal quotation marks omitted.) *Route 188, LLC* v. *Middlebury*, 93 Conn. App. 120, 124, 887 A.2d 958 (2006).

A review of the record reveals that the court's finding regarding the fair market value of the property was legally correct and factually supported. In arriving at an overall conclusion as to the value of the property, the court weighed the opinions of the appraisers, the circumstances surrounding the property, including the application of the forestry designation and its site visit, in which it inspected the property, and the interior of the main residence.[5] See id.

---

[5] We note that our Supreme Court consistently has held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for its consideration by the witnesses under oath.

In its brief, the defendant argues that the court recognized the principle espoused in *National Amusements, Inc.*, namely, that the essence of a tax appeal is to value properties as a whole, and then completely disregarded it in proceeding to value segments of the property. Although the defendant contends that the court's citation of *National Amusements, Inc.*, is inconsistent with its approach to valuation, the defendant failed to move for an articulation. In any event, the defendant misinterprets *National Amusements, Inc.* In that case, we considered whether a plaintiff in a § 12-117a appeal may limit the parameters of the court's valuation determination by challenging in its pleadings only one portion of the assessment. See *National Amusements, Inc.* v. *East Windsor*, supra, 84 Conn. App. 478–81. We held that it may not, reasoning that such a limitation on the court's independent determination of the value of the taxpayer's assessed property would require the court to afford presumptive validity to the assessor's valuation of the uncontested portions. Id., 481. We emphasized that no judicial presumption exists as to the validity of the assessor's conclusions, as the court must reach an independent determination without regard to prior determinations. Id., 480. We did not hold, as the defendant suggests, that it is improper for a court to consider the value of a subject property's component parts in determining its total fair market value, nor can the defendant's argument reasonably be seen as a logical extension of the ruling in *National Amusements, Inc.*

It is particularly appropriate in a case such as this that the trial court be permitted to use a flexible approach and not be constrained to adopt one valuation methodology. See *Aetna Life Ins. Co.* v. *Middletown*, 77 Conn. App. 21, 33, 822 A.2d 330 ("[t]he court's ultimate goal is to establish the true and actual value of

See, e.g., *Hensley* v. *Commissioner of Transportation*, 211 Conn. 173, 178 n.3, 558 A.2d 971 (1989).

the subject property and . . . it is a question of fact for the trier as to whether the method used for valuation appears in reason and logic to accomplish a just result. . . . [No] particular method must be utilized [and valuation principles shall not] serve to limit the court's discretion to choose the method that it believes will result in the fairest approximation of the subject property's value." [Citation omitted.]), cert. denied, 265 Conn. 901, 829 A.2d 419 (2003). In this vein, we find it worth noting that both the assessor and Nadeau also considered the values of the components of the property in determining their opinions as to the property's fair market value. We see no basis for disturbing the discretion of the trial court in considering the evidence it had before it as to the value of the property's component parts in calculating the value of the whole property. The court's valuation was not clearly erroneous.

II

The defendant next claims that given that the property is one of a kind, the court improperly relied on Italia's comparable sales, which were situated in subdivisions on considerably less land than the property, in calculating the value of the primary residence. The defendant alleges that the court's valuation of the property in its entirety is clearly erroneous because it was based on a hypothetical, imaginary property that consisted of a house on a three acre parcel in a subdivision on a ninety-three acre mountaintop site. We are not persuaded.

The following additional facts are relevant to our resolution of the defendant's claim. Italia testified that despite the fact that there were no true comparable properties, there are several properties in Avon that have comparable views and are of a quality, size and condition similar to that of the primary residence. In general, these properties consist of a primary residence

located on three acres of land. Accordingly, Italia testified that in using the comparative sales approach, he determined that a lot size of three acres should be allocated to the primary residence on the basis of his analysis of sales in surrounding areas.[6] Italia chose three properties as comparable.[7] Italia testified as to the features of the comparable properties and their values. He then indicated to the court that he had made adjustments to the fair market values of these comparable properties when calculating the value of the property's primary residence.

In adopting Italia's valuation of the primary residence, the court stated the following: "[S]ales one and two . . . are strikingly similar to the subject primary residence. Sale one . . . contains 3.08 acres of land overlooking the Farmington River Valley. This sale, occurring on December 9, 2003, for $2,525,000, is a single-family home with nine rooms and 5239 square feet of above grade living space. Sale two . . . contains 3.32 acres of land with excellent views of the Farmington River Valley. This sale occurred on July 14, 2003, for $2,275,000 and consists of a single-family home with

---

[6] Italia's value of the primary residence included the site value of three acres. He characterized the additional 1.8 acres as excess acreage and valued it at $120,000, testifying that he had never seen an assessment card in which land outside the primary residence would be assigned or ascribed a lot value. We note that the assessor followed a somewhat different approach in valuing the property. The assessor ascribed two acres to the primary residence and then an acre to the each of the three cottages. Emphasizing that the property could not be divided for purposes of sale due to zoning regulations and setback requirements, the court rejected the approach taken by the assessor. Instead, the court found that out of the 65.6 acres of land in Avon, 60.8 acres consist of forest land, leaving 4.8 acres in support of the primary residence, cottages and barns.

[7] Italia stated that he chose these three properties because they were transferred between September, 2002, and December, 2003, "are similar with respect to views and other physical characteristics of the house being newer construction, size of the dwellings, number of bedrooms . . . and were the three most comparable houses [he] felt existed in the town of Avon at the time of the revaluation."

nine rooms above grade covering 5502 square feet. The finished basement is 1776 square feet and has 1.1 bathrooms." Consequently, the court was persuaded that "Italia's sales one and two . . . support a finding that the primary residence value, including the site [of three acres] . . . was $2.5 million."

In reaching its independent conclusion as to the property's valuation, the court explicitly discredited Nadeau's appraisal[8] and adopted Italia's appraisal because it was persuaded that it represented a more accurate approximation of fair market value. Italia testified that in calculating a fair market value for the unique property, he utilized a combination of the cost approach, the comparative sales approach and the income approach and explained to the court, in detail, his methods and calculations. "[T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible. . . . [I]t is the proper function of the court to give credence to one expert over the other." (Citation omitted; internal quotation marks omitted.) *Melillo* v. *New Haven*, 249 Conn. 138, 151, 732 A.2d 133 (1999). The court was persuaded that Italia's comparable properties were similar to the property. The court also was persuaded by Italia's approach in combining the values of the property's different components to determine the value of the

---

[8] The court stated: "A review of the comparable sales selected by Nadeau show little resemblance to the subject. Sales one and five are in Lyme; sale two is in Cheshire; sale three is in Farmington; and sale four is in Old Lyme. Sale one is an antique sixteen room, five bedroom home built in 1790 on twenty-seven level acres selling in 2002 for $3.8 million. It is comparable to a bed and breakfast, not the subject property. Sale two is a fifteen room, four bedroom home on thirty acres of rolling land selling in 2001 for $4 million. Sale four is an eight room, four bedroom, 6282 square foot house on 21.47 acres selling in 2002 for $3,558,600. . . . None of these sales contain land that is restricted in use as is the subject."

entire property given its uniqueness. On the basis of our review of the transcripts and exhibits, we are convinced that Italia employed a legally permissible method in calculating his appraisal value. The court's reliance on Italia's comparable sales in its valuation of the property was not clearly erroneous.

### III

The defendant's final claim is that the court's valuation of the property is not supported by the record because the court failed to make adjustments for the fact that (1) the property was purchased almost twenty years ago for $6 million, (2) the primary residence alone was insured for $4,280,000 and (3) Michael Konover, who resides on the property along with Victoria Konover, testified that he would not accept $3,050,000 to sell the property. The defendant also argues that the court's valuation was improper because there was "clear evidence that the assessor in valuing Italia's own comparable sales placed values lower than the actual sales price on them." The defendant alleges that on the basis of the entire evidence, it is clear that a mistake has been made, a just result was not accomplished and that the court ignored reality. We disagree.

As emphasized previously, the court "must arrive at [its] own conclusions as to the value of the [taxpayer's property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and [its] own general knowledge of the elements going to establish value." (Internal quotation marks omitted.) *National Amusements, Inc.* v. *East Windsor*, supra, 84 Conn. App. 480.

The defendant concedes that the court was free to credit such testimony and evidence as deemed appropriate. As stated earlier, we are persuaded that in determining the property's value, the court properly reviewed the evidence before it, considered the

accepted methodologies employed by the assessor, Italia, and Nadeau, and relied on its own view of the site. With regard to the defendant's first and second claims, the purchase price of the property some twenty years ago and the insured value of the primary residence are marginally relevant at best in determining the property's present fair market value. Likewise, the fact that the Konovers would not accept $3.05 million for the property does not mean that the court's valuation constituted a mistake or that a just result was not accomplished. Finally, the fact that the assessor placed lower fair market values on Italia's comparable properties than the prices they sold for does not make the court's reliance on these values improper. We find nothing in the record to warrant a conclusion that the court's factual findings were clearly erroneous. They are supported by the evidence, the court's own view of the property and properties as comparable as any could be to this unique property in Avon.

The judgment is affirmed.

In this opinion the other judges concurred.