ANTHONY R. FERRIGNO, TRUSTEE *v.* CROMWELL DEVELOPMENT ASSOCIATES ET AL.
(AC 26235)

Schaller, Bishop and McLachlan, Js.

Argued October 11, 2005—officially released February 21, 2006

*Louis J. Bonsangue*, with whom, on the brief, was *Max Stuart Case*, for the appellants-appellees (named defendant et al.).

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellee-appellant (plaintiff).

*Opinion*

SCHALLER, J. The defendant Cromwell Development Associates (Cromwell Associates) and certain of its defendant partners[1] appeal from the deficiency judgment rendered by the trial court in favor of the plaintiff, Anthony R. Ferrigno, trustee, in the amount of $978,993.90. The plaintiff has filed a cross appeal. On appeal, the defendants claim that the court improperly (1) concluded that the evidence did not support their

---

[1] Cromwell Associates is a Connecticut partnership. Its general partners were also named as defendants. Eight of the defendant partners, Steven Chernock, Jr., John R. Chernock, Philip Gaynes, Jane E. Miller, Elliot Miller, Janice Miller, Maynard A. Selmon and Dram Realty, have joined the appeal. We refer in this opinion to Cromwell Associates and the partners who have joined the appeal as the defendants.

special defense of laches and (2) miscalculated the deficiency judgment. On cross appeal, the plaintiff alleges that the court improperly (1) applied the doctrine of assemblage for purposes of establishing the fair market value of the subject property and (2) totaled the fair market value of the two parcels at issue. We agree with the plaintiff that the court improperly applied the doctrine of assemblage and, accordingly, reverse the judgment of the trial court and remand the case for a new deficiency hearing.

The following facts and procedural history are relevant to the defendants' appeal and the plaintiff's cross appeal.[2] On March 25, 1981, the defendants borrowed $150,000 from the plaintiff and secured the loan with a mortgage. The subject property of the note and mortgage consists of two separate parcels of land in Cromwell. One parcel consists of 0.94 acres on West Street, and the other consists of 2.11 acres on Shunpike Road. Although the two parcels are not adjacent to each other, both are adjacent to a thirty-one acre parcel that Cromwell Associates had purchased previously and which was not the subject of the foreclosure or the deficiency hearing. The plaintiff, who is a minority member of Cromwell Associates, extended the loan to the defendants in his capacity as trustee of the Treeland Employees Profit and Sharing Plan and Trust.

The defendants defaulted on the note in 1982. Although some payments continued, no payments have been made since December 25, 1987.[3] Following the purchase of the West Street and Shunpike Road parcels and until October, 1995, Cromwell Associates made

---

[2] This case has an extensive procedural and factual history, which is set forth in *Ferrigno* v. *Cromwell Development Associates*, 44 Conn. App. 439, 689 A.2d 1150 (1997), aff'd, 244 Conn. 189, 708 A.2d 1371 (1998).

[3] Payments by the defendant partners ceased some time prior to March 17, 1987. The plaintiff submitted payments to himself for his share until December 25, 1987.

numerous attempts to market the subject property as a unit with the adjacent thirty-one acre parcel. At about the time of the defendants' default, the plaintiff ceased all communication with Cromwell Associates and would no longer cooperate with the marketing of the property.[4] Subsequently, on September 13, 1988, the plaintiff initiated a foreclosure action on the West Street and Shunpike Road properties. Following a trial, the court rendered a judgment of strict foreclosure on April 26, 1995. Title to the West Street and Shunpike Road parcels vested in the plaintiff on October 27, 1995.

On November 14, 1995, the plaintiff, pursuant to General Statutes § 49-14, filed a timely motion for deficiency judgment. The court denied the plaintiff's motion on the ground that the postdefault interest rate on the note was usurious under General Statutes § 37-4. After the plaintiff appealed, we reversed the court's judgment and ordered a new deficiency hearing. Our decision was affirmed by our Supreme Court on March 24, 1998, and the case was remanded for a hearing.

Despite the remand order, a substantial delay in the proceedings ensued and, consequently, the deficiency hearing did not begin until April 8, 2004.[5] During the deficiency hearing, both the plaintiff and the defendants offered an expert real estate appraiser to testify about the fair market value of the West Street and Shunpike Road parcels as of October 27, 1995, the date title vested in the plaintiff. The plaintiff's expert, Peter Vimini,

---

[4] At trial, the defendant Steven Chernock, Jr., testified as follows: "[The plaintiff] wouldn't communicate with [Cromwell Associates]. He seemed very distraught during this period of time. He wouldn't answer any of the phone calls. He wouldn't answer any letters. . . . [He] made [marketing the properties] very difficult. Every time [Cromwell Associates] had a broker, a developer or anyone who came to us with an interest to procure the property, we had to tell them in all honesty we had a disgruntled partner and that seemed to scare them away."

[5] The court took judicial notice of the reasons for the delay, which included a mistrial, as well as numerous scheduling conflicts and continuances.

appraised each parcel separately using the market data or direct sales comparison approach. Vimini described each property as a vacant, undeveloped parcel of land and also noted that the fair market value of the West Street parcel was reduced because the property lacked frontage on a public highway. On the basis of his assessment, Vimini concluded that the fair market value of the two parcels totaled $90,000.[6]

In contrast, the defendants' appraiser, Gary Olcha, used the assemblage doctrine of valuation and concluded that the fair market value of the two parcels totaled $400,000. Under the assemblage doctrine, Olcha considered the adjacent thirty-one acre parcel and its potential for consolidation with the West Street and Shunpike Road parcels. This consolidation, in Olcha's view, would create a thirty-four acre parcel with great development potential and, consequently, a much higher fair market value.[7]

In its January 7, 2005 memorandum of decision, the court rendered judgment in favor of the plaintiff. The court agreed with the defendants that assemblage was the proper method of valuation. The court concluded that the "defendants presented a compelling argument to establish that the doctrine of assemblage is a reasonable and realistic way to determine what the true fair market value of the subject property was at the time of vesting."[8] The court, however, rejected the defendants'

---

[6] The Shunpike Road parcel was valued at $80,000, and the West Street parcel was valued at $10,000.

[7] Olcha testified that he did not know the parties involved in the case and that he did not value the parcels separately because he believed it would not be appropriate.

[8] In relying on an assemblage theory of valuation, the court explained that "[t]here was evidence and testimony offered to establish that the two parcels were purchased and marketed for sale as part of an assemblage with the thirty-one acre piece. The three parcels share the same zoning designation and, in fact, one of the two subject parcels (West Street), standing alone, does not meet the existing minimum lot size requirement of two acres for the zone where it is situated.

appraisal amount and instead relied on evidence, presented by the defendants, of an assemblage valuation performed by the Cromwell tax assessor approximately four weeks prior to title vesting in the plaintiff. On the basis of the tax assessment, the court concluded that the fair market value of the West Street and Shunpike Road parcels totaled $332,000.[9] On the same day, the court also issued a deficiency judgment, in which it calculated the deficiency to be $978,993.90. The defendants' appeal and the plaintiff's cross appeal followed.

The dispositive issue is the plaintiff's claim that it was improper for the court to treat the two subject parcels as an assemblage with the thirty-one acre parcel because no evidence was presented to suggest that it was reasonably probable that the three parcels would be combined. We agree and therefore reverse the judgment and remand the case for a new deficiency hearing.[10]

"The thirty-one acre parcel is owned by partners who are also partners of [Cromwell Associates]. The two subject parcels were purchased by the partners, who owned the thirty-one acre parcel, because of their location relative to the thirty-one acre parcel. There was testimony by a witness for the plaintiff that the best thing that could be done with the West Street property, which has no access to a public highway, is to assemble it with the thirty-one acre parcel.

"The Cromwell tax assessor has valued the three parcels based upon the assemblage of the three parcels together. . . . There was no evidence that the said assessment was ever appealed by the plaintiff or the defendants."

[9] On cross appeal, the plaintiff claims that the $332,000 figure was a miscalculation. Although our decision does not require us to decide that claim, we note that it does appear from the memorandum of decision that the court miscalculated when totaling the fair market value of the West Street and Shunpike Road properties. The court adopted the Cromwell assessor office's appraisals of $112,000 for the West Street parcel and $210,000 for the Shunpike Road parcel, and then incorrectly added those figures to total $332,000. The correct total is $322,000.

[10] On appeal, the defendants claim that the court improperly concluded that the evidence did not support the special defense of laches. An adequate record for review of that claim does not exist.

We first note the standard of review. "The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant. . . . First,

At the outset, we note that with respect to the issue of valuation, it "is a matter of fact to be determined by the trier's independent judgment. . . . Because this is a challenge to the court's finding of facts, we apply a clearly erroneous standard of review. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony." (Citations omitted; internal quotation marks omitted.) *New London* v. *Picinich*, 76 Conn. App. 678, 685, 821 A.2d 782, cert. denied, 266 Conn. 901, 832 A.2d 64 (2003).

"The doctrine of assemblage applies when the highest and best use of separate parcels involves their integrated use with lands of another. Pursuant to this doctrine, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable. If applicable, this

there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, *unless the subordinate facts found make such a conclusion inevitable as a matter of law.* . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Emphasis added; internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005).

In the present case, although the court took judicial notice of the reasons for the delay, the court made no findings of fact with respect to the defendants' claim of laches. Rather, the court stated: "Delays caused by appeal are a practical consequence in lawsuits. This court does not intend to apportion blame or responsibility to either the plaintiff or the defendants for the time it has taken to reach this point in a case originally returnable in 1988. The defendants' request in their posthearing reply brief that the court recognize their defense of laches is denied."

Because the court summarily denied the claim of laches without finding any subordinate facts, we conclude that an adequate record for review of that claim does not exist.

doctrine allows a property owner to introduce evidence showing that the fair market value of his real estate is enhanced by its probable assemblage with other parcels. . . .

"Our Supreme Court . . . accepted the applicability of the assemblage doctrine for valuation purposes in the context of a condemnation case. See *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 767 A.2d 1169 (2001). In *Towpath Associates* . . . it appears that the concept of assemblage was implicit in the trial court's analysis, rather than explicitly applied. . . . According to the Supreme Court, [t]he fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. . . . There must be a reasonable [probability] that the owner could use this tract together with the other [parcels for such] purposes or that another could acquire all lands or easements necessary for that use. . . .

"[I]f a prospective, integrated use is the highest and best use of the land, can be achieved only through combination with other parcels of land, and combination of the parcels is reasonably probable, then evidence concerning assemblage, and, ultimately, a finding that the land is specially adaptable for that highest and best use, may be appropriate." (Citations omitted; internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 120–21, 807 A.2d 519 (2002), cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003). *"If the combination of parcels is reasonably probable* and the prospective, integrated use is not speculative or remote,

assemblage analysis is a proper valuation approach."[11] (Emphasis added.) Id., 123.[12]

To determine whether assemblage was the proper valuation approach in the present case, we must first consider whether there was evidence that the combination of the three parcels was reasonably probable. "[A]lthough the possibility of a change . . . always exists in some degree, it [is often] difficult to prove that such a possibility has become a reasonable probability. . . . Because of uncertainties necessarily attending the determination of the probability of the happening of such an event in the future, claims and evidence regarding the probability must be scrutinized with care and examined with caution." (Citation omitted; internal quotation marks omitted.) *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 551; see *Route 188, LLC* v. *Middlebury*, 93 Conn. App. 120, 126–27, 887 A.2d 958 (2006); *Norwich* v. *Styx Investors in Norwich, LLC*, 92 Conn. App. 801, 807–808, 887 A.2d 910 (2005).

The court heard evidence that until October, 1995, Cromwell Associates marketed the subject parcels for sale together with the thirty-one acre parcel. Evidence that the parties were willing to combine the subject parcels with the thirty-one acre parcel at some prior

---

[11] Furthermore, the court in *Towpath Associates* suggested that in order for the combination of parcels to be reasonably probable, the combination must take place in the reasonably near future: "From the record before us in these cases, we cannot conclude that the trial court properly determined that it was reasonably probable that someone other than the department would have *assembled these properties in the near future* to construct a bridge thereon. The trial court in this case failed to address the reasonable probability that, but for the taking of the defendants' properties, a prudent investor would have obtained, *in the reasonably near future*, both parcels in order to pursue a bridge project." (Emphasis added.) *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 551–52.

[12] Although assemblage analysis is most commonly applied in the area of eminent domain, we note that it also has been employed to value property in other contexts. See *Franc* v. *Bethel Holding Co.*, supra, 73 Conn. App. 126.

date, however, does not make the combination of those parcels reasonably probable as of October 27, 1995. By that date, the relationship between the plaintiff and Cromwell Associates had degenerated and, consequently, Cromwell Associates' attempts at combining and marketing the properties proved unsuccessful. The hostile state of the relationship as of October 27, 1995, was further evidenced by the plaintiff's foreclosing on the subject property.

Although the plaintiff has been the exclusive owner of the subject parcels[13] since October 27, 1995, no evidence was presented with respect to his intentions regarding the combination of those parcels with the thirty-one acre parcel. The plaintiff did not testify, and the testimony of the defendants' witnesses only highlighted the plaintiff's unwillingness to cooperate with the marketing of the property. Finally, and perhaps most significantly, no evidence was presented of any agreement that would have allowed for the combination of those parcels after title vested in the plaintiff on October 27, 1995.

It is axiomatic that "[w]ishful thinking, optimistic conjecture, speculation, rumor and unfounded prognostications do not furnish a proper basis for a finding that a litigant has proved the reasonable probability of a future [event]." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 554. There is no evidence, in the record before us, to support the finding that it was reasonably probable that the West Street and Shunpike Road parcels would have been combined with the thirty-one acre parcel. The court's use of the assemblage doctrine, therefore, was clearly erroneous. Accordingly, we

[13] "Although common ownership of the parcels sought to be integrated would be a factor weighing in favor of a finding that assemblage analysis is appropriate, its presence or absence is not necessarily dispositive of the inquiry." *Franc* v. *Bethel Holding Co.*, supra, 73 Conn. App. 123.

reverse the judgment of the trial court and remand the matter for a new deficiency hearing.[14]

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[14] In light of the foregoing, we need not reach the defendants' claim that the court miscalculated the deficiency judgment.