JOHN ALAN SAKON *v.* TOWN OF GLASTONBURY
(AC 28933)

Gruendel, Robinson and Foti, Js.

Argued September 10—officially released November 18, 2008

*John Alan Sakon,* pro se, the appellant (plaintiff).

*Beth Bryan Critton,* for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, John Alan Sakon, appeals from the judgments of the trial court denying two tax appeals brought pursuant to General Statutes §§ 12-117a and 12-119. The defendant in this matter is the town of Glastonbury. On appeal, the plaintiff claims that the court improperly (1) concluded that he was not aggrieved, (2) applied the doctrine of assemblage

to determine the value of properties appearing separately on the grand list, (3) determined that the highest and best use of his property was commercial development, (4) concluded that the assessment on the property was proper even though there was no possible use of the property to generate income and (5) found that evidence of the predatory nature of the defendant's commercial property assessments was not admissible. We affirm the judgments of the trial court.

This case concerns consolidated tax appeals involving three separate but contiguous parcels of undeveloped land owned or leased by the plaintiff in Glastonbury. None of the parcels has direct frontage, but each has access by way of easements. Together, the three parcels cover approximately 9.36 acres and are located within a commercial zone designated as the planned travel zone.[1] The first parcel, Main Street Rear, is comprised of 4.922 acres and was purchased by the plaintiff in 1985 for $210,000. The second parcel, Griswold Street Rear, consists of 1.82 acres and was purchased by the plaintiff in 1988 for $89,000. The third lot, known as 2980 Main Street, consists of 2.56 acres and was acquired by the plaintiff under a long-term lease commencing on February 11, 1999, for a fifty year period with four twelve year options to renew. Pursuant to the lease agreement, the plaintiff pays rent in the amount of $12,500 per year for use of this parcel.

On the grand list of October 1, 2002, the date of the last townwide revaluation, the town's assessor valued the three parcels at $122,425 per acre. The plaintiff appealed from this assessment to the board of assessment appeals (board), and the valuation was reduced to approximately $40,000 per acre. The plaintiff did not

[1] As described in the court's memorandum of decision, a planned travel zone is "a type of commercial zone that requires a minimum lot area of ten acres for uses permitted in the zone."

appeal from this decision to the Superior Court, and the reduced value appeared on the 2003, 2004, 2005 and 2006 grand lists.

In 2005, the plaintiff once again appealed from the valuation to the board. The appeal was denied, and, pursuant to § 12-117a, the plaintiff appealed to the Superior Court. The plaintiff also brought a direct claim pursuant to § 12-119, alleging that the defendant had imposed an illegal tax on his property. The two claims were consolidated on January 23, 2006.

At trial, both parties submitted testimony as to the proper valuation of the property. The plaintiff, testifying as to the value of his property, calculated the total value of the three parcels at $18,604 or approximately $2000 per acre. The defendant's expert, the town appraiser, Sean T. Hagearty, calculated the total value of the three parcels as $650,000, or approximately $70,000 per acre. By memorandum of decision, the court found the value of the three parcels to be reflected accurately in the reduced value previously determined by the board—a value of approximately $40,000 per acre. Following the close of evidence, the court found that the plaintiff had not sustained his burden of establishing overvaluation and, thus, denied the claims. The plaintiff subsequently filed a motion for reargument, which was denied, and this appeal ensued. Additional facts will be set forth as necessary.

Before addressing the merits of the plaintiff's claims, we first set forth the well settled legal principles underlying a § 12-117a tax appeal, as well as our applicable standard of review. "Section 12-117a, which allows taxpayers to appeal the decisions of municipal boards of [assessment appeals] to the Superior Court, provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . . [Initially], [t]he burden . . . is

upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property." (Internal quotation marks omitted.) *Breezy Knoll Assn., Inc.* v. *Morris,* 286 Conn. 766, 775–76, 946 A.2d 215 (2008).

On appeal, "[w]e review a court's determination in a tax appeal pursuant to the clearly erroneous standard of review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Narumanchi* v. *DeStefano,* 89 Conn. App. 807, 811–12, 875 A.2d 71 (2005).

Cognizant of these principles, we now turn to our resolution of the claims raised in the present appeal.

I

The plaintiff's principal claim contests the court's finding that he was not aggrieved pursuant to § 12-117a; however, this claim is based on two specific yet intertwined findings made by the court in support of its conclusion that the plaintiff failed to establish aggrievement.[2] In reaching its determination that the property was not overassessed by the defendant, the court found applicable the doctrine of assemblage to combine the three parcels for purposes of valuation and then determined that the highest and best use of the assembled property was for commercial purposes. On appeal, the plaintiff claims that both of these findings, as well as the resulting conclusion that he was not aggrieved, is improper.

[2] The plaintiff also argues that the court improperly found that he was not aggrieved in his claim brought pursuant to General Statutes § 12-119. The partial basis for this claim mirrors the grounds asserted to support his claim pursuant to General Statutes § 12-117a, namely, that the court improperly applied the doctrine of assemblage to determine that the highest and best use of the property was for commercial development. In its memorandum of decision, however, the court did not make these findings in its discussion of the plaintiff's § 12-119 claim. Rather, it concluded that the issues involved in the § 12-119 appeals were "in reality, a challenge to the valuation of the plaintiff's properties pursuant to § 12-117a, not whether the assessor acted illegally." In reaching this conclusion, the court found that the plaintiff "fail[ed] to show that the assessor did something illegal pursuant to § 12-119." Accordingly, absent a showing of illegality, the court found that the plaintiff's § 12-119 claim failed.

As stated by our Supreme Court: "[Section] 12-119 requires an allegation that something more than mere valuation is at issue. It is this element that distinguishes § 12-119 from its more frequently evoked companion, [§ 12-117a]. . . . Under § 12-119, there are two possible grounds for recovery: the absolute nontaxability of the property in the municipality where situated, and a manifest and flagrant disregard of statutory provisions. . . . A claim that an assessor used an inappropriate method of appraisal, resulting in overvaluation, is not a claim of illegal or wrongful assessment and, therefore, is properly raised under § 12-117a." (Citations omitted; internal quotation marks omitted.) *Breezy Knoll Assn., Inc.* v. *Morris,* supra, 286 Conn. 778 n.20. In the present appeal, the issues pertaining to aggrievement, the application of the doctrine of assemblage and the highest and best use determination relate to valuation, not illegality. Therefore, these issues do not relate to

Before discussing the merits of the underlying claims assailing the aggrievement conclusion, we briefly set forth the legal framework governing aggrievement in tax appeals taken pursuant to § 12-117a. "The issue of aggrievement involves a two part analysis, which entails both factual determinations and a question of law. Whether a specific action that the assessor takes in his valuation has aggrieved a taxpayer is a question of law. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Westport*, 61 Conn. App. 834, 842, 767 A.2d 1237 (2001).

With the foregoing in mind, we turn first to the claims underlying the plaintiff's broader claim that the court improperly determined that he did not establish aggrievement.

A

Doctrine of Assemblage

The plaintiff claims that the court improperly relied on the doctrine of assemblage in its determination of what constituted the highest and best use for his three parcels, a determination that ultimately affected the court's valuation of his three parcels. Specifically, the plaintiff argues that it is not appropriate to value parcels as an assemblage when the parcels appear separately on the grand list. We are not persuaded.

As a preliminary matter, it should be noted that "[v]aluation is a matter of fact to be determined by the trier's independent judgment. . . . In actions requiring such a valuation of property, the trial court is charged with the duty of making an independent valuation of the property involved. . . . [N]o one method of valuation

the § 12-119 claim and are properly discussed in the context of the § 12-117a appeal.

is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. . . . [T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has broad discretion in reaching such conclusion, and [its] determination is reviewable only if [it] misapplies or gives an improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Abington, LLC* v. *Avon*, 101 Conn. App. 709, 715, 922 A.2d 1148 (2007). Indeed, courts have adopted a wide range of valuation methods. See, e.g., id., 715–17 (upholding court's piecemeal approach that determined valuation of parcel by finding sum of values of individual structures and forest land).

In the present matter, the court found that the plaintiff's property was not overvalued at the grand list value of $40,000 per acre because the highest and best use of the parcels was for commercial development. In reaching this conclusion, the court noted that the plaintiff's proposed valuation overlooked the doctrine of assemblage and the effect that this doctrine has on the property's potential use. Although the proper method of valuation lies within the broad discretion of the trial court, this court's review of the facts found in support of the court's choice of valuation method is subject to the clearly erroneous standard.

"The doctrine of assemblage applies when the highest and best use of separate parcels involves their integrated use with lands of another. Pursuant to this doctrine, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable." (Internal quotation marks omitted.) *Route 188, LLC* v. *Middlebury*, 93

Conn. App. 120, 126, 887 A.2d 958 (2006). "According to the Supreme Court, [t]he fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. . . . There must be a reasonable [probability] that the owner could use this tract together with the other [parcels for such] purposes or that another could acquire all lands or easements necessary for that use." (Internal quotation marks omitted.) Id., 127.

"[I]f a prospective, integrated use is the highest and best use of the land, can be achieved only through combination with other parcels of land, and combination of the parcels is reasonably probable, then evidence concerning assemblage, and, ultimately, a finding that the land is specially adaptable for that highest and best use, may be appropriate." (Internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 121, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003); *Ferrigno* v. *Cromwell Development Associates*, 93 Conn. App. 799, 806, 892 A.2d 291, cert. denied, 278 Conn. 903, 896 A.2d 104 (2006). "[A] court, in deciding whether it is appropriate to employ an assemblage analysis in a particular case, should consider all the circumstances surrounding the proposed combination, including the ownership status of the parcels. If the combination of parcels is reasonably probable and the prospective, integrated use is not speculative or remote, assemblage analysis is a proper valuation approach."[3] *Franc* v. *Bethel Holding Co.*, supra, 123.

---

[3] It should be noted that the plaintiff failed to provide any legal authority to support his contention that the fair market value of his three parcels is not appropriately determined by an assemblage analysis. Instead, the plaintiff contests the court's reliance on *Ferrigno* v. *Cromwell Development Associates*, supra, 93 Conn. App. 799, to support its conclusion that the doctrine of assemblage is appropriate for tax assessment valuation.

A review of the record reveals that the court's application of the doctrine of assemblage as a method of valuation was legally correct and factually supported. In arriving at an overall conclusion that the value of the property was based properly on an assemblage, the court carefully weighed the opinion of the defendant's appraiser against the opinion of the plaintiff. Regarding assemblage, the pro se plaintiff, testifying on his behalf, stated that the only plausible use of his land was as a park and that any valuation of the parcels in aggregate was highly speculative in the absence of a special permit needed to develop the land. On the contrary, the defendant's appraiser testified that the physical characteristics of the site could support a wide variety of commercial uses, ranging in complexity from an office to a recreational-athletic facility. The appraiser also testified about the multitude of feasible commercial alternatives that could be implemented on the property. These alternatives included options with a smaller degree of impact on the town, a factor that weighed heavily in the board's decision to deny previous applications to develop the parcels.

The court also recognized that the plaintiff had made several applications to develop the three parcels commercially as an assemblage, including an application

The plaintiff is correct in stating that *Ferrigno* did not involve a tax appeal; however, in *Franc v. Bethel Holding Co.*, supra, 73 Conn. App. 114, we engaged in a thorough discussion of the doctrine of assemblage, as applied in a variety of jurisdictions and contexts. It is relevant to note that in *Franc,* we stated that "[i]n both eminent domain proceedings and in actions for damages to real property, a trial court enjoys a large degree of discretion in valuing the subject property. . . . We can discern no reason why a factor affecting the fair market value of real property in the former context should be inapplicable in the latter." (Citations omitted.) Id., 126.

The same logic would apply in the present case. Given the broad discretion afforded the court to determine the appropriate method of valuation, given the facts and circumstances of a given case, it stands to reason that a method of valuation that is reasonable to determine fair market value for condemnation or property damages would likewise be reasonable in determining fair market value for tax assessment purposes.

that was pending during this appeal. The court gave ample consideration to the circumstances surrounding the plaintiff's prior applications to develop his property commercially as an assemblage. It noted that the plaintiff received the necessary wetlands permit to develop the subject property and that the permit remains valid. Moreover, although the plaintiff claims that the use of his property as an assemblage is speculative because prior applications to develop the land had been denied, the court heard testimony regarding the considerable size of the plaintiff's proposed development and the fact that his application was denied on the basis of extensive traffic problems.

Weighing all of these factors, the court ultimately concluded that the plaintiff's claim that his properties must be considered separately, rather than as an assemblage, lacked credibility. Furthermore, the court's analysis of the testimony provided by the defendant's appraiser provided adequate support for its implicit finding that the future use of the assembled land was reasonably probable given the location and physical characteristics of the site. "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 99, 626 A.2d 1292 (1993).

On the basis of the foregoing, we conclude that the court's determination to view the parcels as an assemblage for valuation purposes was supported adequately by the record and, therefore, was not clearly erroneous.

## B

### Highest and Best Use

In conjunction with his claim that his property should not be viewed as an assemblage, the plaintiff also claims that the court improperly determined that the highest and best use of his property was for commercial development. Specifically, he argues that commercial development was not a legally permissible use at the time the grand list became effective, and, therefore, the court should not have accepted testimony from the defendant that determined the value based on speculative future use.[4]

"A property's highest and best use is commonly defined as 'the *use that will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate.'* . . . The highest and best use determination is inextricably intertwined with the marketplace because 'fair market value' is defined as 'the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use.' . . . The highest and best use conclusion necessarily affects the rest of the valuation process because, as the major factor in determining the scope of the market for the property, it dictates which methods of valuation are

---

[4] In a related claim, the plaintiff contests the court's determination that the highest and best use of property may be a use that requires the issuance of a special permit that has not been granted. The plaintiff argues that in the absence of a special permit, commercial use is not legally permissible and, therefore, cannot be the highest and best use. The plaintiff cites no legal authority and provides no legal analysis in support of this claim, however, and we therefore decline to afford it review. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]).

applicable. Finally, a trier's determination of a property's highest and best use is a question of fact that we will not disturb unless it is clearly erroneous." (Citations omitted; emphasis in original.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 25–26, 807 A.2d 955 (2002).

In the present case, we conclude that the court's highest and best use determination is not clearly erroneous. As discussed previously, the court carefully considered the testimony and written reports of both the plaintiff and the defendant's appraiser and ultimately determined that the plaintiff lacked credibility when he testified that the highest and best use for his parcels was as a park. Specifically, the court heard extensive testimony detailing the wide variety of commercial uses that could be supported by the physical characteristics of the assemblage. This testimony then was weighed against that of the plaintiff, in which he submitted comparable sales of vacant lands located in a flood plain to establish that the best use of his parcels was as a park.

In his brief, the plaintiff essentially asks this court to reweigh the evidence in his favor. As previously stated, however, "[t]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible. . . . [I]t is the proper function of the court to give credence to one expert over the other." (Internal quotation marks omitted.) *Abington, LLC* v. *Avon*, supra, 101 Conn. App. 719. Here, the court heard conflicting testimony as to the highest and best use of the property and concluded that the highest and best use was for commercial development. In reaching this conclusion, the court properly gave credence to one expert over the other. The findings reached by the trial court must stand "unless they are legally or logically inconsistent with the facts found or

unless they involve the application of some erroneous rule of law." (Internal quotation marks omitted.) *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 226 Conn. 100. As the facts contained in the record adequately support the court's finding, we will not disturb this finding on appeal.

Furthermore, the plaintiff's reliance on *Sheldon House Club, Inc.* v. *Branford*, 149 Conn. 28, 175 A.2d 186 (1961), is misplaced. In *Sheldon House Club, Inc.*, our Supreme Court reviewed the assessment of property where the only evidence offered by the plaintiff to prove overvaluation was the sale of corporate stock several days after the corporate property was assessed. Id. The factual background of that case is unique in that the plaintiff corporation attempted to establish overvaluation of its real estate by submitting evidence of the sale of its corporate stock and the price received at auction for the furnishings. As the only corporate assets prior to the sale consisted of real estate and furnishings, the plaintiff corporation posited that the value of the real estate adequately was determined by the value of the furnishings when sold at auction subtracted from the sale price of the corporate stock. Id. Our Supreme Court upheld the trial court's determination that this evidence was insufficient to establish overvaluation. In the present case, the plaintiff cites to the portion of the court's discussion stating that "[t]he property to be valued was that which stood in the plaintiff's name on October 1, *regardless of its intended future use*." (Emphasis added.) Id., 33. The context of this statement, however, was focused on whether it was a proper valuation method to bundle personalty and realty into one value pursuant to the value of the corporate stock and then determine the value of one piece of the bundle by the auction value of the other. The court recognized that the auction price is not reflective of the fair market value of the furnishing, and, therefore,

"[i]t necessarily follows that the auction sale price is an unsafe guide in the determination of the true and actual value of the realty." Id., 32. This case does not stand for the proposition posited by the plaintiff, specifically, that property cannot be assessed for a use that requires a special permit that has yet to be issued.

Accordingly, we conclude that because the court gave careful consideration to the expert testimony and appraisals, and its findings are clearly supported by the record, its highest and best use determination is not clearly erroneous and will therefore not be disturbed on appeal.

## C

### Aggrievement

Having determined that the court did not improperly conclude that the doctrine of assemblage was the appropriate valuation method to ascertain that the highest and best use of the plaintiff's property was for commercial development, we next consider the plaintiff's broader claim that the court improperly found that he was not aggrieved.

"The issue of aggrievement involves a two part analysis, which entails both factual determinations and a question of law. Whether a specific action that the assessor takes in his valuation has aggrieved a taxpayer is a question of law. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Westport*, supra, 61 Conn. App. 842. As we have previously discussed, a court's decision as to the value of the property is ordinarily reviewed pursuant to the clearly erroneous standard. See *Grolier, Inc.* v. *Danbury*, 82 Conn. App. 77, 78, 842 A.2d 621 (2004).

In the present case, the court found that the highest and best possible use of the plaintiff's property was for commercial development. The basis of this determination was the application of the doctrine of assemblage. The court heard expert testimony and determined that the plaintiff's land, when viewed as an assemblage, was not overvalued as a commercial property, and, therefore, the plaintiff was not aggrieved. We have already determined that the court properly applied the doctrine of assemblage to determine that the highest and best possible use of the plaintiff's three parcels was for commercial development. On the basis of the facts of this case and the foregoing analysis, we conclude that the court properly determined that the plaintiff had failed to show aggrievement due to overvaluation of his properties.

## II

The plaintiff also claims that the court improperly refused to consider evidence and argument as to the alleged predatory nature of the defendant's system of assessment. We disagree.

"[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [plaintiff] of substantial prejudice or injustice. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *Narumanchi* v. *DeStefano*, supra, 89 Conn. App. 811. Furthermore, "[f]or evidentiary rulings claimed to be improper to be reviewed by this court, they must be set forth in the briefs as required and outlined by the rules of practice." (Internal quotation marks omitted.) *Cichocki* v. *Quesnel*, 74 Conn. App. 299, 301, 812 A.2d 100 (2002). Practice Book § 67-4 (d) (3) requires a party challenging

a purported evidentiary error to submit a "brief or appendix [that] include[s] a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." See also W. Horton & S. Cormier, Rules of Appellate Procedure (2003 Ed.) § 67-4 (5), authors' comments, p. 202 ("[e]videntiary rulings and the charge must be presented essentially verbatim as discussed in § 67-4 [d]").

A review of the plaintiff's brief indicates that we need not determine whether the court abused its discretion because the plaintiff has failed to brief his evidentiary claim adequately in accordance with Practice Book § 67-4 (d) (3). In his brief, the plaintiff contends that an exhibit of a "sales comparable" was offered as proof of the defendant's predatory practices, but the court "ruled to exclude the exhibit." He also claims that he sought to raise the same issue through the testimony of Kenneth E. Leslie, the director of community development for the defendant, but this testimony was also excluded by the court as "irrelevant and not admissible." Although the plaintiff does provide a detailed description of what the evidence purportedly represents, his brief contains no citation to authority or to the record and, therefore, is procedurally not in compliance with Practice Book § 67-4. Accordingly, we will not review his claim.[5] See *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 447 n.20, 820 A.2d 258 (2003) (refusing to review evidentiary claim in case in which "the

[5] In reaching this conclusion, we are mindful of the plaintiff's pro se status. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Nonetheless, [a]lthough we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Ervin* v. *Avallone*, 108 Conn. App. 55, 56 n.1, 947 A.2d 380, cert. denied, 288 Conn. 911, 953 A.2d 652 (2008).

defendants do not furnish any citation to the record, or to anywhere in the transcript, the trial court's ruling, or the defendants' claim[ed] grounds for admission of the evidence").

The judgments are affirmed.

In this opinion the other judges concurred.