******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BRIDJAY CAPONE ET AL. *v.* MICHELE NIZZARDO ET AL.
## (AC 42867)

Alexander, Suarez and DiPentima, Js.

*Syllabus*

The plaintiff sought equitable distribution of certain real property containing residential and equestrian buildings that she and the defendant owned as tenants in common and payment of just compensation for her undivided 25 percent minimal interest in the property. The parties entered into an oral stipulation before the trial court but were unable to agree on the fair market value of the property. Both parties presented expert testimony to the court from real estate appraisers. The court agreed with the defendant's expert appraiser, determined the fair market value to be $1,110,000 and issued certain orders regarding payment to the plaintiff for her undivided minimal interest. Thereafter, the plaintiff appealed to this court, claiming that the trial court committed plain error and made clearly erroneous findings of fact in regard to the highest and best use of the property. *Held*:

1. The plaintiff could not prevail on her claim that the trial court committed plain error when it determined the highest and best use of the property without reviewing applicable zoning regulations because she did not meet either prong of the plain error doctrine: the plaintiff failed to demonstrate that the trial court made a plain and obvious error that affected the fairness and integrity of and public confidence in the judicial proceedings, as the parties stipulated that the plaintiff had only a minimal interest in the property and that a partition in kind or by sale would not better serve their interests, the hearing before the court was for the sole purpose of having it determine the fair market value of the property, no evidence was submitted to the court regarding the possibility of obtaining any zoning variance and the court did not conclude that the current use of the property would not be permitted to continue, such that the court's determination of the highest and best use and fair market value of the property did not require the review of applicable zoning regulations; moreover, the plaintiff did not establish that the failure to grant relief would have resulted in a manifest injustice.

2. The trial court's determination that the highest and best use of the property, a residential use augmented by a supporting equestrian facility that had limited commercial viability, was not clearly erroneous: the court considered the testimony and written reports of both the plaintiff's and the defendant's appraisers, and concluded that the comparable sales offered by the defendant's appraiser were more similar to the subject property in size and location than those offered by the plaintiff's appraiser; moreover, the value determined by the plaintiff's appraiser was based in part on a price per horse stall method that included twenty-three stalls, but the evidence at trial supported the court's finding that only thirteen or fourteen stalls on the property were potentially functional; furthermore, the only evidence of income generated from the property was from residential rent and rent for two horse stalls, and the court considered the testimony from a witness offered by the defendant that the marketing of the property as a commercial equestrian facility was not successful.

Argued April 13—officially released August 10, 2021

*Procedural History*

Action, inter alia, seeking the equitable distribution of property, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant Bongiorno Children Red Barn, LLC, was cited in as an additional party; thereafter, the matter was withdrawn as to the named defendant et al.; subsequently, the matter was tried to the court,

*Hon. Kevin Tierney*, judge trial referee; judgment for the defendant Bongiorno Children Red Barn, LLC, from which the plaintiff appealed to this court. *Affirmed.*

*Danielle J. B. Edwards*, with whom, on the brief, was *Peter V. Lathouris*, for the appellant (plaintiff).

*Mark F. Katz*, for the appellee (defendant Bongiorno Children Red Barn, LLC).

*Opinion*

ALEXANDER, J. The plaintiff Bridjay Capone appeals from the judgment of the trial court ordering the defendant Bongiorno Children Red Barn, LLC, to pay her $277,500 in just compensation for her 25 percent interest in the property owned by the parties.[1] Specifically, the plaintiff challenges the court's determination that the fair market value of the property is $1,110,000. On appeal, the plaintiff claims that the court (1) committed plain error when it determined the highest and best use of the property without considering the applicable zoning regulations, (2) made clearly erroneous factual findings in determining the highest and best use of the property, and (3) due to these errors, the court abused its discretion in determining the value of the property. We disagree with the plaintiff's claims[2] and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of this appeal. On January 17, 2017, the plaintiff filed a two count complaint seeking, inter alia, partition of real property located on Bangall Road in Stamford (property), owned by the plaintiff and the defendant as tenants in common. On August 7, 2018, the parties entered into an oral stipulation before the court. In that stipulation, the parties agreed, inter alia, that (1) the plaintiff is the owner of a 25 percent minimal interest in the property,[3] (2) a partition by sale or in kind would not promote the best interests of the parties, and (3) if the parties were unable to agree on the fair market value of the property, the court would decide the fair market value of the property and thereby determine the purchase price that the defendant would pay to the plaintiff in consideration for her delivery of a quitclaim deed. Thereafter, the plaintiff filed her third amended complaint, comprised of one count seeking equitable distribution of the property and payment of just compensation for her undivided 25 percent minimal interest in the property. A trial was held on February 20 and 21, 2019.

As a result of the parties' stipulation, the plaintiff and the defendant presented evidence to the court for it to make a determination of the fair market value of the property. It is undisputed that the property is comprised of two parcels. Parcel one is 3.32 acres and parcel two is 1.04 acres. On the basis of the evidence before it, the court found that parcel one contains a single-family house, an indoor arena/riding ring, a two-story apartment/office building that includes two three room apartments, a thirteen or fourteen stall horse barn, and an eight or nine stall horse barn. The single-family house and two apartments are rented to tenants. Two stalls in the thirteen or fourteen stall horse barn are rented to tenants. None of the horse stalls in the eight or nine stall barn is in use. The court further found that parcel two is located directly across from parcel one on the

other side of Bangall Road, and that it contains two equestrian riding rings, an outdoor storage facility, and a parking lot.

Each party presented expert testimony from a real estate appraiser. The plaintiff's expert, Eric Michel, opined in his appraisal report that the highest and best use of the property is as "an equestrian facility as it is currently improved."[4] Michel appraised the value of parcels one and two together, and testified that the fair market value of the property was $3,000,000. In arriving at this value, Michel utilized both the cost approach[5] and the sales comparison approach[6] to determine the value of the property, and then reconciled those two figures. Using the cost approach, he determined that the value of the land unimproved was $1,525,000 and the value of the improvements less depreciation was $1,099,296, for a total rounded value of $2,625,000. Using the sales comparison approach, Michel compared the property to five other recently sold properties and made adjustments to determine the value of the property. Only one of his comparable properties was located in Fairfield County, where the property is located, and the remaining four were located in the state of New York. The properties ranged from 15.82 acres to 286.23 acres in size and each of the properties had equestrian facilities. The nature of some of the improvements differed from those on the property, such that one of the comparable properties had a twenty stall barn with a veterinary room, viewing room, tack room, indoor and outdoor riding areas, breeding stalls, and wash stalls, and another had direct riding trail access and bordered a large preservation area. Michel used a price per stall figure in comparing the property and the comparable properties, determining that the property had twenty-three stalls and the adjusted price per stall was $139,130, for a total rounded value of $3,200,000. He testified that the property is commercial because "historically it had been operated as a commercial operation and its physical characteristics show that it still has the ability to operate that way." When asked how much research he had done into the historical operation of a commercial equestrian facility at the property, he replied, "[n]one." Further, Michel's report described the property's condition and quality as "average" and "poor to average."

The defendant's expert, Adam Hardej, opined that the highest and best use of the property is continuation of its current use as "residential/office/equestrian" property. Hardej appraised the value of the parcels separately, and testified that the fair market value of parcel one was $865,000 and parcel two was $245,000, for a total fair market value of $1,110,000. Like Michel, Hardej used both the cost approach and the sales comparison approach. Under the cost approach, he determined the value of the land on parcel one to be $370,000, and the value of improvements less depreciation to be $491,902, for a total rounded value for parcel one of $860,000.

Under the sales comparison approach, Hardej compared the property to six recent land sales. Each comparable property was located in Fairfield County and the size of the properties ranged from 1.12 acres to 10.89 acres. Four of Hardej's comparable properties were rated residential/equestrian, and two had no equestrian component. Under the sales comparison approach, he determined that after adjustments the value of parcel one was $870,000. Hardej testified that "there hasn't been any viable equestrian facility, going concern operation on the subject property, for as long as anybody can remember. And when I say that, I've heard people say ten plus years . . . ." In his appraisal report, he described the improvements on the property as in "average" condition. Further, Hardej testified that the small barn on the property containing nine horse stalls was "in a dilapidated condition" and was "beyond its economic life" and therefore had no contributory value to the property. He stated that these nine stalls are "absolutely nonoperational . . . ."

The defendant also presented testimony from Frank Bongiorno, who is a manager and member of the defendant. He testified that there are thirteen stalls in the big barn and nine stalls in the small barn. Bongiorno explained that the stalls in the small barn are not usable because they are "crumbling and falling apart. The roof itself is shot. The stalls–in between–the partitions in between are shot." Further, he testified that his sister has advertisements out to attract boarders but that they "haven't been very successful, no one will come in" due to the "dilapidated condition, the size of the stalls."

The court issued a memorandum of decision on April 17, 2019. The court determined that the highest and best use of the property is "continuation as a residential use augmented by a supporting equestrian facility that has limited commercial viability." The court further described the property as a "residential use with some older equestrian facilities as additional improvements to the residential status." Although each appraiser used both the cost method and the sales comparison method, the court ultimately credited the sales comparison approach used by Hardej. It found that Michel's comparable properties involved much larger parcels of land than the property, and that these land sales did not support Michel's opinion of value. The court found Hardej's sales comparables to be closer in location and size to the property, and the sale price of these lots revealed that the immediate neighborhood of the property was not likely to support Michel's opinion of value. The court determined the value of parcels one and two together, not as separate lots, and concluded that the fair market value of the property was $1,110,000. The court ordered the defendant to pay the plaintiff $277,500, representing the plaintiff's 25 percent interest. The plaintiff filed an appeal from that decision.

Thereafter, the plaintiff filed a motion for articulation of the court's decision. In its articulation dated February 4, 2020, the court stated that it had considered both appraisers' reports in determining the fair market value of the property, gave greater weight to the sales comparison method used by both appraisers, and did not give weight to the " 'site as though vacant' " method used by the plaintiff's real estate appraiser. Further, the court considered the relevant comparable sales used by the parties' appraisers and the testimony from Bongiorno regarding the marketing of the property.

I

The plaintiff first claims that the court committed plain error when it determined the highest and best use, and ultimately the fair market value of the property, without reviewing applicable zoning regulations. We disagree.

The following additional information is relevant to our resolution of this issue. The court found, and each appraiser's report stated, that both parcels of land are in the RA-2 zone, which is Stamford's two acre residential zone. No expert testimony was presented to the court concerning the possibility of obtaining a variance or zoning permission for the use of a one acre parcel in a two acre zone, so the court did not consider parcel two to be a separate buildable lot. Further, the court determined that the use of the property as an equestrian facility appeared to comply with the zoning regulations as a nonconforming use, and no additional evidence of the Stamford zoning regulations concerning horses and equestrian facilities was presented to the court.

The plaintiff did not argue before the court that a review of zoning regulations was necessary to determine the highest and best use or fair market value of the property, and neither party introduced any zoning regulations at trial. In her brief, the plaintiff admits that "the trial court did not receive, review, or rely upon any of the applicable zoning regulations. Neither of the appraisal reports submitted by the parties' experts include the applicable zoning regulations . . . ." (Emphasis omitted.) However, on appeal, the plaintiff asserts that the trial court's failure to consider the zoning regulations, sua sponte, should be reviewed under the plain error doctrine.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly pre-

served or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless [she] demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . .

"[Our Supreme Court has] clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the [plaintiff] simply to demonstrate that [her] position is correct. Rather, [to prevail] the party [claiming] plain error [reversal] must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . .

"In addition, although a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine, such a finding is not, without more, sufficient to warrant the application of the doctrine. Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Internal quotation marks omitted.) *DeChellis* v. *DeChellis*, 190 Conn. App. 853, 864–66, 213 A.3d 1, cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019).

In the present case, the plaintiff has failed to demonstrate that the court made a plain and obvious error by determining the highest and best use or fair market value of the property without consulting the zoning regulations. The plaintiff has cited no authority that places a duty on the trial court to consult zoning regulations prior to determining the highest and best use of real property when zoning regulations are not provided to the court by the parties and are not required for the court's findings. Instead, she argues that "[i]t was

incumbent upon the court to require their submission by counsel or obtain them independently." In support thereof, the plaintiff cites to *Delfino* v. *Vealencis*, 181 Conn. 533, 436 A.2d 27 (1980).

The plaintiff's reliance on *Delfino* is misplaced. In that case, the trial court granted the plaintiffs a partition by sale of property owned by the plaintiffs and the defendant as tenants in common. Id., 534. In *Delfino*, the defendant claimed that the trial court had improperly determined that a partition by sale, as opposed to a partition in kind, best promoted the rights of the parties. Id., 538. The court's conclusion that a partition in kind was not in the best interests of the parties was based, in part, on its findings that operation of the defendant's garbage removal business on the property would make it difficult for the plaintiffs to obtain approval for a subdivision on their part of the property and that the defendant's use of the property for such a business violated existing zoning regulations, making it unlikely that the defendant would be able to continue her business in the future. Id., 539–40. On appeal, our Supreme Court determined that the trial court's inferences were unfounded, as neither party had submitted the applicable zoning regulations to the court. Id., 541–42. The present case is readily distinguishable from *Delfino*. Here, the parties stipulated that the plaintiff had only a minimal interest in the property and that a partition in kind or by sale would not better serve the interests of the parties. The hearing before the court was for the sole purpose of having it determine the fair market value of the property. No evidence was submitted to the court regarding the possibility of obtaining any zoning variance and the court did not conclude that the current use of the property would not be permitted to continue.

We conclude that the plaintiff has not met either prong of the plain error doctrine. The plaintiff has failed to demonstrate that the court made a plain and obvious error that affected "the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *DeChellis* v. *DeChellis*, supra, 190 Conn. App. 865. Because of the parties' stipulation, the court's determination of the highest and best use and fair market value of the property did not require the review of applicable zoning regulations. Further, the plaintiff has not established that the failure to grant relief will result in a manifest injustice. Therefore, we are not persuaded that plain error exists.

II

The plaintiff next argues that the court made clearly erroneous findings of fact when it determined that the highest and best use of the property was residential, rather than as a commercial equestrian center.[7] The defendant counters that the evidence presented at trial supported the court's determination that the highest and best use of the property is "the continuation as a

residential use augmented by a supporting equestrian facility that has limited commercial viability." We agree with the defendant.

We first set forth the relevant legal principles and standard of review. "A property's highest and best use is commonly accepted by real estate appraisers as the starting point for the analysis of its true and actual value. . . . [U]nder the general rule of property valuation, fair [market] value, of necessity, regardless of the method of valuation, takes into account the highest and best value of the land. . . . A property's highest and best use is commonly defined as the use that will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 25, 807 A.2d 955 (2002).

"The highest and best use determination is inextricably intertwined with the marketplace because fair market value is defined as the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use. . . . The highest and best use conclusion necessarily affects the rest of the valuation process because, as the major factor in determining the scope of the market for the property, it dictates which methods of valuation are applicable. Finally, a trier's determination of a property's highest and best use is a question of fact that we will not disturb unless it is clearly erroneous." (Internal quotation marks omitted.) *Sakon* v. *Glastonbury*, 111 Conn. App. 242, 253–54, 958 A.2d 801 (2008), cert. denied, 290 Conn. 916, 965 A.2d 554 (2009). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, supra, 262 Conn. 23. "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) Id., 26.

In the present case, the court considered the testimony and written reports of both the plaintiff's and the defendant's expert appraisers, and determined that the highest and best use of the property "is the continuation as a residential use augmented by a supporting eques-

trian facility . . . ." The court found that the major difference in the appraiser's values was a result of their choice of comparable sales, which was in turn affected by their different classifications of the highest and best use of the property. After examining the evidence, the court concluded that Hardej's comparable sales were more similar to the property in size and location than were Michel's. In addition, Michel determined the value based, in part, on a price per stall method that included twenty-three horse stalls, but the evidence at trial supported the court's finding that only thirteen or fourteen horse stalls on the property were potentially functional. The only evidence of income generated from the property was rent for the single-family home and two apartments, as well as rent for two horse stalls in the larger barn. In reaching its decision, the court considered the testimony from Bongiorno that "the marketing of the property as a commercial equestrian facility was not successful." After a thorough review of the record, we conclude that the court's determination that the highest and best use of the property, a residential use augmented by a supporting equestrian facility that has limited commercial viability, was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The original plaintiffs, Bridjay Capone and Red Barn Stables, LLC, filed their initial complaint against three defendants, Michele Nizzardo, John Bongiorno, and Frank Bongiorno (original three defendants). On February 2, 2018, the original three defendants transferred, by quitclaim deed, their combined 75 percent interest in the property to Bongiorno Children Red Barn, LLC. On February 9, 2018, the original three defendants moved to cite in Bongiorno Children Red Barn, LLC. The court granted this motion on February 28, 2018. On August 8, 2018, the plaintiff withdrew the action as to the original three defendants. The court was asked to disregard the status of the plaintiff Red Barn Stables, LLC. The third amended complaint contained one count with one plaintiff, Bridjay Capone, and one defendant, Bongiorno Children Red Barn, LLC. All references herein to the plaintiff are to Capone, and references to the defendant are to Bongiorno Children Red Barn, LLC.

[2] We do not address separately the plaintiff's third claim because it is premised on her first two claims. The plaintiff contends that the court's plain error in failing to consider applicable zoning regulations, coupled with its clearly erroneous factual findings in determining the highest and best use of the property, constituted an abuse of discretion. Because we conclude that the trial court did not commit plain error and that its determination of the highest and best use of the property was not clearly erroneous, we also conclude that the court did not abuse its discretion in determining the value of the property.

[3] General Statutes § 52-500 (a), pertaining to the sale or equitable distribution of real property owned by two or more persons, provides in relevant part that "[i]f the court determines that one or more of the persons owning such real . . . property have only a minimal interest in such property and a sale would not promote the interests of the owners, the court may order such equitable distribution of such property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners."

[4] We note that, in its decision, the court stated that Michel determined "that the highest and best use is as a vacant residential lot . . . ." However, the court also stated that Michel characterized the property as a "commercial equestrian center," and in its articulation, stated that it did not give weight to the "site as though vacant" method used by Michel. (Internal quotation marks omitted.) In his appraisal report, Michel determined the highest and best use of the property "as though vacant" prior to determining the highest

and best use "as improved." His report states that the highest and best use of the property as improved is "an equestrian facility as it is currently improved." In addition, Michel testified that the highest and best use of the property is "to continue its use for an equestrian facility."

[5] "Under the cost approach, the appraiser estimates the current cost of replacing the subject property with adjustments for depreciation, the value of the underlying land and entrepreneurial profit." *Sun Valley Camping Cooperative, Inc.* v. *Stafford*, 94 Conn. App. 696, 702 n.10, 894 A.2d 349 (2006).

[6] "The comparable sales approach is also known as the market data approach or sales comparison approach. . . . It is a process of analyzing sales of similar recently sold properties in order to derive an indication of the most probable sales price of the property being appraised. The reliability of this technique is dependent upon (a) the availability of comparable sales data, (b) the verification of the sales data, (c) the degree of comparability or extent of adjustment necessary for time differences, and (d) the absence of [nontypical] conditions affecting the sales price. . . . After identifying comparable sales, the appraiser makes adjustments to the sales prices based on elements of comparison." (Citations omitted; internal quotation marks omitted.) *Sun Valley Camping Cooperative, Inc.* v. *Stafford*, 94 Conn. App. 696, 702 n.8, 894 A.2d 349 (2006).

[7] In her reply brief, the plaintiff argues that the defendant failed to respond adequately to the issues raised in her claims, and therefore the defendant has abandoned its defense. We disagree. "There is no rule . . . that an appellee's failure to reply in its brief to an issue raised by the appellant is an implicit concession that the appellant's claim is meritorious and that the claim should be decided in the appellant's favor. Abandonment of a claim for failure of a party to brief that claim typically occurs when the *appellant* fails to brief properly the claim that is raised on appeal." (Emphasis in original.) *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 842 n.24, 860 A.2d 715 (2004).